[No. D039057. Fourth Dist., Div. One. Jan. 21, 2003.]

CLAUDIA CAMARILLO, Plaintiff and Appellant, v.
ROBERT F. VAAGE et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

**COUNSEL**

The Loftus Law Firm and Donald J. Loftus for Plaintiff and Appellant.

White, Noon & Oliver, Daniel M. White, Steven G. Amundson and Harry W. Harrison for Defendants and Respondents.

## OPINION

**HUFFMAN, Acting P. J.**— ██ ██ In this case we are required to consider the interplay of Code of Civil Procedure[2] section 364, subdivisions (a), (d) and (e), a MICRA notice provision, and section 474, respecting the naming of Doe defendants, on the issue of whether the section 364 requirement of giving notice of intent to commence a medical malpractice action, as applied to known potential defendants, means that no such 90-day notice need be given to potential Doe defendants, nor must a shell medical malpractice complaint naming Doe defendants be filed in order to avoid the loss of a claim due to untimeliness, as against any such potential Doe defendants. These issues arise in plaintiff and appellant Claudia Camarillo's complaint for legal malpractice against defendant Attorneys Robert F. Vaage and Debra A. Morse (Defendant Attorneys). Camarillo claims they committed professional negligence by failing to make a timely filing of a Doe defendant complaint to preserve a potential medical malpractice action against the delivery doctor at the birth of Camarillo's child, Francisco, because their actual timely filing of a notice of intent to commence a medical malpractice action against certain other medical defendants involved in the delivery was insufficient to do so. (§§ 340.5, 364, 474.) Such a potential lawsuit, if filed, would have sought damages on Camarillo's own behalf for medical negligence for the treatment she received during the delivery, from a doctor whose name she did not know when she consulted with Defendant Attorneys at a time shortly before the limitations period was to run on any such personal claim, and while the Defendant Attorneys were considering whether to take her case.

On the day set for trial of the subject legal malpractice action, Defendant Attorneys renewed a prior motion for summary judgment, relying on their interpretation of section 364 and also on a newly reached evidentiary stipulation about their lack of knowledge at all relevant times of the identity of the delivery doctor. (§ 437c, subd. (c).) The motion was granted and

[2]All statutory references are to this code unless otherwise stated. MICRA, the Medical Injury Compensation Reform Act of 1975, is comprised of a number of statutes implementing the policy of containing the costs of malpractice insurance "by controlling or redistributing liability for damages, thereby maximizing the availability of medical services to meet the state's health care needs. [Citation.]" (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 112 [32 Cal.Rptr.2d 263, 876 P.2d 1062].) Section 364 is one such provision, intended to promote pretrial resolution of medical malpractice claims. (*Woods v. Young* (1991) 53 Cal.3d 315, 320 [279 Cal.Rptr. 613, 807 P.2d 455] (*Woods*).)

Camarillo appeals. Based upon her statutory interpretation of sections 364 and 474, and upon case law such as *Grimm v. Thayer* (1987) 188 Cal.App.3d 866 [233 Cal.Rptr. 687] (*Grimm*), disapproved in part in *Woods, supra,* 53 Cal.3d 315, 328, footnote 4, she contends her medical malpractice claim against that delivery doctor was negligently lost, despite the serving of a notice of intent to commence action upon other known defendants, and thus there should be triable issues of material fact as to the alleged legal malpractice or breach of fiduciary duty toward her by Defendant Attorneys.

We conclude that section 364, subdivisions (d) and (e), and section 474, read together, provide a workable and commonsense rule that serves to extend the applicable statute of limitations against an unknown defendant when a section 364, subdivision (a) notice is appropriately served, according to the overall statutory scheme, upon known potential defendants in the medical malpractice context. Moreover, the *Grimm, supra,* 188 Cal.App.3d 866, case authority survived its partial disapproval in this respect. (*Woods, supra,* 53 Cal.3d at p. 328, fn. 4.) Accordingly, we affirm the defense summary judgment in this legal malpractice case and also deny the motion for sanctions on appeal filed by Defendant Attorneys.

FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 1998, Camarillo gave birth to her son at Scripps-Mercy Hospital (the hospital). She had received prenatal care from the Logan Heights Family Health Center (the health center). During the delivery, her sister-in-law made a home video. This home video showed the actions and face of the delivery doctor as he applied traction to the head of the baby as it emerged from the birth canal, and showed the doctor was applying some force and a twisting motion during the delivery process. During the delivery, Camarillo was concerned that excessive force was being applied. After the birth, it was discovered that the baby had sustained nerve damage to the brachial plexus and his left arm was paralyzed.

The week before the one-year anniversary of the birth, Camarillo contacted the law offices of Defendant Attorneys to explore filing a claim for her son against the hospital, health center, and doctors involved. On August 2, 1999, the Defendant Attorneys viewed the home video with her and examined the medical records that she had brought along to the appointment. They recognized that Camarillo might have her own individual claim as well, and that her statute of limitations of one year was about to run (Aug. 9, 1999, a Monday). A longer limitations period would apply to an action brought by her son. (§ 340.4.)

Defendant Attorney Morse wrote a memo to Defendant Attorney Vaage, dated August 4, 1999, stating that she thought they should preserve the

impending statute for Camarillo, as against the hospital and the health center, and noted further: "Unfortunately, must probably name the physician as well, although I'm having difficulty ascertaining his identity. She (Camarillo) doesn't remember."[3] The same date, August 4, 1999, Morse sent a letter entitled "Notice of Intention to Commence Action (Code of Civil Procedure section 364)" (the section 364 notice) to the health center and the hospital. No letter was sent to the (unknown) delivery doctor or any other individual doctor. In her deposition, Camarillo contended she gave the attorneys a document identifying the birth attendant as Dr. Larry Flickinger, but the attorneys denied receiving such a document.

Subsequently, on September 25, 1999, Defendant Attorney Morse sent Camarillo a certified letter advising her the law firm was declining to represent her in any potential medical malpractice action she might pursue regarding her own injuries. The letter advised her that the statute of limitations applicable to her injuries was tolled by the section 364 notice of August 4, 1999, but that she only had 90 days from the mailing of the notice to file a complaint for medical malpractice (until early Nov. 1999). She was advised to seek advice of other counsel immediately.

On September 29, 1999, after receiving this letter, Camarillo telephoned Defendant Attorney Morse to discuss it. Camarillo's deposition states that Morse told her she and her son did not have a good case, and the delivery doctor was a nice guy. Defendant Attorney Morse made notes of the conversation to the effect that Camarillo understood the conversation about the limitations period and filing requirements.[4]

Camarillo contacted another attorney eight months later. In her deposition, she stated she had not filed a complaint within 90 days of the section 364 notice because she was upset Defendant Attorneys had decided not to proceed with her case.

On September 19, 2000, Camarillo filed this action for professional negligence against Defendant Attorneys. Her single cause of action raised theories of legal malpractice and breach of fiduciary duty, on the basis that the section 364 notice had failed to give the statutorily required notice to any individual doctor, and thus by the time the September 25, 1999 letter declining to take the case was sent, all of Camarillo's claims for damages

---

[3]In her briefs on appeal, Camarillo misleadingly quotes only a portion of this statement, to suggest that at that point, the Defendant Attorneys did not want to sue the delivery doctor for personal reasons. The full quote reveals that any reluctance was likely based on a lack of knowledge of his identity.

[4]Although Camarillo's first language is Spanish, she does not dispute that she can communicate in English as well.

against all doctors in the world for professional negligence in handling the birth had become time-barred.

The parties conducted extensive discovery, seeking medical records to establish who had been the delivery doctor and seeking expert opinion on the conduct of the delivery as shown by the records and the home video. Defendant Attorneys then brought a motion for summary judgment, which was denied due to a factual conflict about the identity of the delivery doctor. The order denying the motion also referred to a triable issue about the identity of the doctor, due to Defendant Attorneys' action in telling Camarillo the doctor seemed to be a nice person, in connection with refusing to take the case.

The matter was set for trial on September 10, 2001, and various evidentiary issues were addressed, prior to consideration of motions in limine and other pretrial matters. Witnesses were called, including Dr. Flickinger and another doctor ultimately identified as the delivery doctor, Dr. Salzetti. On that day, plaintiff's attorney entered into a stipulation with Defendant Attorneys and their counsel that Dr. Flickinger was not the delivery doctor, and based on their testimony, Defendant Attorneys had not known at any relevant time who that doctor was.

Accordingly, Defendant Attorneys were allowed to renew their previously denied motion for summary judgment, based on the existence of new or different facts, the testimony and the evidentiary stipulations of September 10, 2001 before the trial court (as summarized above; § 1008, subd. (b)). The court then found there was no triable issue of material fact in this action and that Defendant Attorneys were entitled to summary judgment as a matter of law, for the following specified reasons: "1. It is established by stipulation of the parties that Larry Dean Flickinger, M.D., was not the delivery doctor; [¶] 2. It is established by stipulation of the parties that neither defendant knew the identity of the delivery doctor prior to the dissemination of defendants' letter of September 25, 1999, informing plaintiff that defendants would not take plaintiff's case. [¶] 3. Plaintiff proffered evidence as follows: During a telephone call between plaintiff and Defendant Morse subsequent to plaintiff's receipt of the letter declining representation of September 25, 1999, plaintiff was told by Defendant Morse that defendants would not represent her because the delivery doctor was a 'nice guy' and that she did not have a good case. [Citation.] The Court finds that either of these statements fail to raise a triable issue of material fact in that the Court finds that as a matter of law neither statement, without further evidence, establishes a breach of any fiduciary duty."

The trial court entered judgment accordingly in favor of Defendant Attorneys. Camarillo filed a timely notice of appeal. Also currently before this

court is Defendant Attorneys' motion for sanctions for an allegedly frivolous appeal, based upon its argued lack of merit, upon the nature of the disputes about the defendant doctor's identity, and also upon allegedly unsubstantiated references by appellant's counsel in the reply brief to the confusion engendered by the events of September 11, 2001, which occurred during the proceedings while the summary judgment order was being prepared. (§ 907; Cal. Rules of Court, rule 27(e)(1)(A); discussed in an unpublished portion of this opinion.)

## DISCUSSION

### I.

#### Applicable Standards

Camarillo appeals the grant of a defense summary judgment. ■ "As recently stated by the Supreme Court in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493]: 'Neither does summary judgment law in this state any longer require a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action. . . . All that the defendant need do is to "show[] that one or more elements of the cause of action . . . cannot be established" by the plaintiff. [Citation.] In other words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X. Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove not X. This is in line with the purpose of the 1992 and 1993 amendments, which was to liberalize the granting of motions for summary judgment.' (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th 826, 853-854, fns. omitted.)" (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 233 [114 Cal.Rptr.2d 151].)

■ De novo review is used to determine whether, as a matter of law, summary judgment was appropriately granted. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054 [100 Cal.Rptr.2d 223].) De novo review is appropriate to determine the soundness of a trial court's resolution of the meaning of a statute, as entailing a pure question of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### II

#### Issues Presented

■ In this legal malpractice action, Camarillo seeks to show the Defendant Attorneys failed to exhibit the requisite degree of competence in their

handling of this medical malpractice claim. ▮ In such a case, the inquiry must be whether the attorneys' advice was so legally deficient when it was given that they "may be found to have failed to use 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' [Citation.]" (*Smith v. Lewis* (1975) 13 Cal.3d 349, 356 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231], disapproved on other grounds, *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) The attorneys are expected "to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques. [Citations.]" (*Smith, supra,* 13 Cal.3d. at p. 358.)

▮ To evaluate the trial court's ruling that as a matter of law no triable issues of material fact existed as to the alleged legal malpractice or breach of fiduciary duty, we turn to the line of cases which have dealt with the effect of the 90-day notice of intent to sue required by section 364, subdivision (a) when given within the last 90 days of the one-year statute of limitations as tolling that statute for 90 days. (E.g., *Grimm, supra,* 188 Cal.App.3d 866; disapproved in part in *Woods, supra,* 53 Cal.3d 315, 328, fn. 4.) In particular, we examine the interaction of that rule with the Doe defendant amendment procedure of section 474, in light of the stipulated facts that Dr. Flickinger was not the delivery doctor, nor did the Defendant Attorneys know the identity of the delivery doctor at the relevant times. We must also take into account the fact that the Defendant Attorneys have not ever contended that the section 364 notice as given to the hospital and health center somehow constituted a substituted service upon that unknown person, under an agency theory. (See fn. 7, *post.*) Rather, the question is whether Defendant Attorneys complied with the requirements of section 364, consistent with the facts as known to and discoverable by them, in the context of protecting Camarillo's rights while deciding whether to take her case.

### III

*Section 364 as Affected by Section 474*

### A

*Woods Holding*

In *Woods, supra,* 53 Cal.3d 315, the Supreme Court began its analysis by stating the rules designed to effectuate legislative intent, by construing

statutory language in context and harmonizing statutes to the extent possible, both internally and with respect to each other. (*Id.* at p. 323.) "Interpretations that lead to absurd results or render words surplusage are to be avoided." (*Ibid.*) Next, the Supreme Court referred to the policies underlying MICRA, including an intention to "reduce the cost and increase the efficiency of medical malpractice litigation" by, among other things, changing the legal rules governing such litigation. (*Id.* at p. 319.) The court noted that as relevant here, one such change was to impose, by means of section 364, subdivision (a), "a 90-day 'waiting' period on the plaintiff in an effort to encourage negotiated resolution of the medical malpractice dispute outside the formal litigation process. (*Grimm v. Thayer, supra,* 188 Cal.App.3d at p. 871.)" (*Woods, supra,* 53 Cal.3d at p. 325.)

Section 364, subdivision (a) requires that "[n]o action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." With reference to limitations, subdivision (d) provides, "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." With reference to defendants whose names are then unknown, subdivision (e) states: "(e) The provisions of this section shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474."[5]

In *Woods, supra,* 53 Cal.3d 315, the Supreme Court interpreted several subdivisions of section 364 (not including subd. (e)) to hold "that when a plaintiff gives the 90-day notice of intent to sue required by section 364(a) in the last 90 days of the 1-year statute of limitations that statute is tolled for 90 days." (*Woods,* at p. 328.) In reaching its conclusions, the Supreme Court rejected any reliance upon the tolling provision of section 356, a non-MICRA provision, to support a claim that the limitations period must be extended in a MICRA context. (*Woods,* at p. 321.)[6] The court went on to observe that an analysis under section 356 was not enough to "resolve the problem presented by a literal application of section 364(d)" because: "That provision states that if section 364(a)'s 90-day notice of intent to sue is

---

[5]In pertinent part, section 474, the fictitious name statute, states in part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ."

[6]Section 356 provides that a period of time in which the commencement of an action is stayed by a statutory prohibition is not counted as part of the time limited for the commencement of that action. (*Woods, supra,* 53 Cal.3d at p. 321.)

served during the last 90 days of the statute of limitations, the limitations period is 'extended 90 days from service of the notice.' As mentioned previously, a literal application of section 364(d) would require a medical malpractice plaintiff to commence the lawsuit in the same period of time during which section 364(a) precludes the plaintiff from filing suit. To resolve the problem, we must therefore consider both the context in which section 364 was enacted and the legislative objective. [Citations.] [¶] . . . [¶] That legislative purpose is best effectuated by construing section 364(d) as tolling the one-year statute of limitations when section 364(a)'s ninety-day notice of intent to sue is served during, but not before, the last ninety days of the one-year limitations period. Because the statute of limitations is tolled for 90 days and not merely extended by 90 days from the date of service of the notice, this construction results in a period of 1 year and 90 days in which to file the lawsuit. In providing for a waiting period of at least 90 days before suit can be brought, this construction achieves the legislative objective of encouraging negotiated resolutions of disputes." (*Woods, supra,* 53 Cal.3d at p. 325.)[7]

Importantly, in reaching its conclusions in *Woods,* the Supreme Court disapproved, among others, the case of *Grimm, supra,* 188 Cal.App.3d 866, to the extent it made statements inconsistent with the holding in *Woods.* (*Woods, supra,* 53 Cal.3d at p. 328, fn. 4.) The analysis in Woods did not rely solely on section 356 (an 1872 non-MICRA provision) to decide the matter before it. Rather, after disposing of the section 356 issue, the Supreme Court engaged in an independent statutory construction of section 364, to implement its policies under MICRA. We next describe the rule set out in *Grimm, supra,* 188 Cal.App.3d 866, and comment upon its viability in the present case, i.e., whether it is based solely on a discredited section 356 analysis. First, however, some background authority on the naming of Doe defendants is necessary.

B

*Grimm Holding and Reliance Thereon*

██ "Code of Civil Procedure section 474 is to be liberally construed. [Citation.] '[T]he relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously is *what facts the plaintiff actually knew* at the time the original complaint was filed.' [Citation.] 'It is when

---

[7]The Supreme Court went further in *Woods, supra,* 53 Cal.3d 315, by rejecting an equal protection argument that the statutory scheme improperly favored dilatory plaintiffs who waited until the last 90 days of the one-year limitation period to serve their section 364 letter. The court also ruled that its opinion should be applied prospectively only. (*Woods, supra,* at pp. 330-331.)

[plaintiff] is actually ignorant of a certain fact, not when [plaintiff] might by the use of reasonable diligence have discovered it. Whether [plaintiff's] ignorance is from misfortune or negligence, [plaintiff] is alike ignorant, and this is all the statute requires.' [Citation.] [¶] The phrase 'ignorant of the name of a defendant' is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant." (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1170 [101 Cal.Rptr.2d 776].)

In *Grimm, supra,* 188 Cal.App.3d 866, the court was faced with a doctor defendant's argument that a plaintiff's malpractice action against him was barred by the statute of limitations because suit was commenced more than one year after the plaintiff discovered her cause of action, and there was no tolling or suspension of the limitations period as against Doe defendants by the giving of a section 364 notice naming him. The facts were that the plaintiff was injured in an automobile accident on November 21, 1981, and received treatment at a particular hospital. Her treating physician told her she did not have a fracture of her neck or at least that the X-rays did not show a fracture, as read by the radiologist (later determined to be defendant Dr. Thayer). However, a new X-ray was taken later and she was advised she had a fracture with a small bone fragment in the spinal canal, and underwent surgery. At the time of her discharge she had already formed the opinion that an initial misdiagnosis of her condition had caused her to sustain injuries. She therefore served the hospital and the treating doctor with a section 364 notice on November 19, 1982. She then filed suit on February 9, 1983, naming as defendants the hospital, the treating doctor, and Does 1 through 100. Then, on March 22, 1984, she amended her complaint to name Dr. Thayer, the radiologist who read the first X-rays, as defendant Doe 1.

In *Grimm, supra,* 188 Cal.App.3d 866, defendant Dr. Thayer successfully brought a summary judgment motion in the trial court on the grounds that (1) the plaintiff knew his identity and the facts giving rise to her cause of action against him no later than December 1982, well before she filed suit, and the action should be barred because the relation-back doctrine applicable to Doe defendants should not apply (§ 474); and (2) the action was barred as against him because suit was commenced more than one year after the plaintiff discovered her cause of action, and the section 364 notice as to the hospital and the treating doctor only applied to them, pursuant to sections 364 and 356 which suspended the running of the limitations period for 90 days; he argued these did not apply to a Doe defendant. However, the appellate court reversed the summary judgment in favor of Dr. Thayer and rejected his interpretation of section 364, subdivision (e) because it "would provide an incentive to file suit before expiration of the 90-day notice period, the

incentive being the preservation of the action as against Doe defendants. This interpretation is clearly inconsistent with the statutory purpose of providing a 90-day period for negotiation before commencement of suit." (*Grimm, supra,* 188 Cal.App.3d at p. 871.)

Rather, in *Grimm* the court accepted the plaintiff's interpretation of section 364, subdivision (e) "to mean only that the 90-day notice need not be given to Doe defendants before amending the complaint to name them." (*Grimm, supra,* 188 Cal.App.3d at p. 870.) The court said, "Plaintiff's interpretation avoids this unfortunate result while still giving meaning to subdivision (e). In our opinion, plaintiff's interpretation is clearly more consistent with the legislative objective in enacting section 364. Accordingly, the filing of plaintiff's action was timely as against Doe defendants and the summary judgment may not be upheld on either of the grounds urged by defendant Thayer." (*Grimm, supra,* 188 Cal.App.3d at p. 871.)

In determining the extent to which *Grimm, supra,* 188 Cal.App.3d 866, survives its partial disapproval in *Woods, supra,* 53 Cal.3d 315, we look for "the principle or rule that constitutes the ground of the decision, and it is this principle or rule that has the effect of a precedent. ▮ It is therefore necessary to read the language of an opinion in the light of its facts and the issues raised, to determine (a) which statements of law were necessary to the decision, and therefore binding precedents, and (b) which were arguments and general observations, unnecessary to the decision, i.e., dicta, with no force as precedents. [Citation.]" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, p. 986, discussing ratio decidendi.) Another way of stating this principle is found in *Ginns v. Savage* (1964) 61 Cal.2d 520 [39 Cal.Rptr. 377, 393 P.2d 689] (*Ginns*): "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Id.* at p. 524, fn. 2.)

▮ As we read the analysis in *Grimm, supra,* 188 Cal.App.3d 866, although it acknowledges the potential application of section 356 to exclude time from a limitations period, it does not base its holding entirely or even primarily upon that section. Rather, the Court of Appeal in *Grimm*, after referring to section 356 as a trigger for tolling of a limitations period, went on to make an independent statutory construction of section 364, to attempt to achieve its statutory purpose by analyzing the effect of the 90-day tolling period created by section 364, subdivision (d). (*Grimm, supra,* 188 Cal.App.3d at p. 870.) The court in *Grimm* rejected as absurd any interpretation of section 364, subdivision (d) or (e) that would interfere with the statutory purpose of providing a 90-day period for negotiation before any

action was commenced. (*Grimm, supra,* 188 Cal.App.3d at p. 871 [a construction of statutes which is reasonable, fair, and in harmony with its purpose is to be preferred over a statutory construction that would produce absurd consequences].) No separate filing of a Doe complaint under those circumstances was required. (*Ibid.*)

As a side note, before *Woods, supra,* 53 Cal.3d 315, was issued in 1991, in *Hazel v. Hewlett* (1988) 201 Cal.App.3d 1458, 1464 [247 Cal.Rptr. 723], the court followed *Grimm* by interpreting section 364, subdivision (e) as meaning, "the 90-day notice need not be given to Doe defendants before amending the complaint to name them . . . . (*Grimm v. Thayer,* [*supra*], 188 Cal.App.3d 866, 869-871 . . . .)" The court then concluded the plaintiff's complaint was timely filed as against the Doe defendants named therein, as well as against the doctor who had been specifically named and served with the section 364 notice. (*Hazel v. Hewlett, supra,* 201 Cal.App.3d at p. 1464.)

Upon the issuance of *Woods, supra,* 53 Cal.3d 315, in 1991, any statement in *Grimm, supra,* 188 Cal.App.3d 866, that was inconsistent with the *Woods* holding (i.e., "when a plaintiff gives the 90-day notice of intent to sue required by section 364(a) in the last 90 days of the 1-year statute of limitations that statute is tolled for 90 days") was disapproved. (*Woods, supra,* 53 Cal.3d at p. 328, and fn. 4.) The facts and issues in *Woods* did not include any Doe defendant problems, nor was there any discussion of Doe defendant statutory sections 364, subdivision (e) or 474 therein. The Supreme Court approvingly cited *Grimm* as authority setting forth a key policy consideration of section 364, subdivision (a) (the creation of the 90-day waiting period before suit may be filed, to encourage out-of-court negotiation). (*Woods, supra,* 53 Cal.3d at p. 325.) We find no indication in *Woods* that any holding dealing with Doe amendment problems, such as were addressed in *Grimm,* was intended or effected, or that any full disapproval of *Grimm* was accomplished.

A number of civil procedure and personal injury treatises have cited *Grimm, supra,* 188 Cal.App.3d 866, without noting any impairment of its authority on any issue other than the nonapplicability of section 356 in the MICRA context, due to its partial overruling in *Woods, supra,* 53 Cal.3d 315. For example, in 30 California Forms of Pleading and Practice (2000) section 345.53[20] [c], page 345-119, *Grimm* is cited for the point that compliance with the section 364 notice procedure against named codefendants will extend the period for commencement of an action against Doe defendants, as well as against those named in the notice.

In Flahavan et al., 2 California Practice Guide: Personal Injury (The Rutter Group 2002), paragraph 5:103, page 5-78, the authors state that when

a section 364 notice is sent to named defendants, the plaintiff who sent the notice will have the benefit of the 90-day tolling provision of section 364, subdivision (d), as to Doe defendants not named in the notice, because their identities were unknown. In contrast, section 364, subdivision (d) will not extend the limitations period against any defendants whose identities were known to plaintiff but who were not included in the section 364 notice. (*Flavahan*, citing *Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1559-1560 [28 Cal.Rptr.2d 70].)[8]

In Horvitz and Levy, Medical Injury Compensation Reform Act of 1975 (MICRA) Manual (2001) chapter G, paragraph 9, page 104, the authors cite *Grimm, supra,* 188 Cal.App.3d 866, and section 364, subdivision (e) for the proposition that the notice of intention to sue under section 364 need not be given to Doe defendants before the plaintiff amends the complaint to name them.

In Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) paragraph 1:870, page 1-190, the authors interpret section 364, subdivision (e) as stating that Doe defendants need not be given notice before suit, but that, "[w]hen such notice is given to named defendants within the last 90 days of the limitations period, the statute is tolled against *both* the named defendants and the Doe defendants. [*Grimm v. Thayer*[*, supra,*] 188 CA3d 866, 870-871 . . . .]"

To further analyze the extent to which *Grimm, supra,* 188 Cal.App.3d 866, is still good authority in this context, despite its discussion of section 356 and related authority, we refer to authority that has arisen in the context of the naming of Doe defendants. ■ The policy of section 474 seeks to protect those plaintiffs who are truly ignorant of the identity of a person brought into the case as a Doe defendant. If that requirement is met, the amendment to the complaint relates back to the date the complaint was filed and the statute of limitations is preserved. (*Davis v. Marin* (2000) 80 Cal.App.4th 380, 386-387 [94 Cal.Rptr.2d 896] (*Davis*).) In *Davis,* two problems were presented: Was the defendant (a treating medical professional, Dr. Marin), timely sued either as a Doe defendant under section 474,

---

[8]There is no issue in this case, as there was in *Hanooka v. Pivko, supra,* 22 Cal.App.4th 1553, and cases such as *Derderian v. Dietrick* (1997) 56 Cal.App.4th 892 [65 Cal.Rptr.2d 800], about the sufficiency of notice to an individual doctor when the section 364 notice is sent to a hospital, billing service, or the like, on behalf of a known potential defendant, but the adequacy of such vicarious notice to the known individual is in dispute. Here we have a stipulation that at all relevant times, the Defendant Attorneys did not know the identity of the delivery doctor, nor did they serve a notice on another party that sought to give that unknown person some kind of substituted notice under section 364. Rather, our issue is whether they had to do something more than they did regarding the unknown delivery doctor, in order to meet professional standards of care.

or pursuant to a 90-day tolling period effected by a section 364 notice? The plaintiff in that case knew of the defendant doctor's identity as of the filing date of her complaint, and had already served her with such a notice. However, the complaint named only Doe defendants, and the plaintiff did not add Dr. Marin to the lawsuit as a named defendant until she filed a Doe amendment (within 90 days of the § 364 notice).

In *Davis, supra,* 80 Cal.App.4th 380, the defendant, Dr. Marin, obtained a grant of summary judgment on statute of limitations grounds. The Court of Appeal reversed, rejecting the defendant's argument that since she was brought in as a Doe defendant under section 474, the terms of section 364, subdivisions (d) and (e) could not apply to her as a Doe defendant. Rather, the court found the 90-day tolling period of section 364, subdivision (d) still applied because the defendant doctor had been personally given such a notice, and the court essentially deemed it immaterial that she was later brought into the lawsuit as a Doe defendant, because she was otherwise timely brought in within that 90-day tolling period. Under those circumstances, the question of whether or not the Doe amendment "related back" to the date the complaint was filed was irrelevant. (*Davis, supra,* 80 Cal.App.4th at p. 387.) The Court of Appeal rejected any alternative approach that would "elevate form over substance and would ignore common sense." (*Ibid.*)

We agree with the court in *Davis, supra,* 80 Cal.App.4th 380, that these procedural statutes must be interpreted in a way that does not elevate form over substance nor ignores common sense. ■ As noted in *Woods, supra,* 53 Cal.3d 315, our task is to construe statutory language in context and to harmonize statutes to the extent possible, both internally and with respect to each other. (*Id.* at p. 323.) "Interpretations that lead to absurd results or render words surplusage are to be avoided." (*Ibid.*)

## C

*Contentions: Statutory Interpretation*

■ Essentially, Camarillo takes the position that the operation of sections 364 and 474, considered together, required the Defendant Attorneys to undertake, as a minimum act that would meet the applicable standard of care, the filing of a Doe complaint as to the unknown delivery doctor, even if they would be declining to take the plaintiff's case. She bases this argument on an assumption that the section 364 notice, as given to the hospital and the health center, was inadequate to extend the limitations period as to any unknown defendants, such as the delivery doctor.

As support for this argument, Camarillo relies on a general discussion in 2 McDonald, California Medical Malpractice Law and Practice (1992) section 11.2, page 3, on how a medical malpractice complaint should be drafted. There, the authors state that a plaintiff's attorney should anticipate that later discovery may reveal and implicate other health care providers who are unidentified as of the filing date of the complaint, and that this warrants "an adequately pleaded cause of action against such fictitious defendants." (*Ibid.*) Camarillo relies on this general authority as supporting her specific position that the Defendant Attorneys breached their fiduciary duties by failing to file a complaint against Doe defendants, regardless of whether they would be taking the case.

Similarly, Camarillo relies upon 1 California Civil Procedure Before Trial (Cont.Ed.Bar 3d ed. 1990) chapter 16, section 16.2, pages 506-507, for its discussion of the section 364 notice procedure, citing *Woods, supra,* 53 Cal.3d 315 as construing section 364, subdivision (d) as "tolling" rather than "extending" the one-year statute of limitations. Her theory is that the *Grimm* variation on this rule is not cited by this treatise, and thus *Grimm, supra,* 188 Cal.App.3d 866, must not still be good authority.

In contrast, Defendant Attorneys contend that their actions met the applicable standards of professional care, because their sending of the section 364 notice to the hospital and the health center was sufficient to preserve as timely, for an additional 90 days, any potential action on Camarillo's behalf with regard to those defendants, and further, this course of action served to extend the limitations period as to any further defendants whose identity was then unknown to her and to them, the attorneys she was consulting on the matter, such that no separate filing of a Doe complaint against an unknown defendant was mandated by the statutory scheme.

D

*Analysis*

Both for the reasons stated in *Grimm, supra,* 188 Cal.App.3d 866, respecting statutory notice to Doe defendants, and based upon our independent reading of section 364, we conclude that the loss of Camarillo's claim against the unknown delivery doctor was not attributable to any inaction or negligence by Defendant Attorneys. First, there is no support for Camarillo's contention that the rule stated in *Grimm* did not survive the partial disapproval expressed in *Woods, supra,* 53 Cal.3d at page 328, footnote 4. The treatises she has cited do not support her position, nor does the language of *Woods.* The Court of Appeal in *Grimm* referred to section 356 as an

alternative ground of the respondent's contentions, and the court actually engaged in direct statutory construction of section 364, finding that to implement its legislative policy, section 364, subdivisions (d) and (e) must be construed to mean that no 90-day notice need be given to Doe defendants before a complaint is amended to name them. Otherwise, a plaintiff's attorney would have an incentive to file a complaint before the 90-day notice period had elapsed, in order to preserve an action against Doe defendants, and this proposed course of action would interfere with the statutory purpose of providing a 90-date negotiation period before any lawsuit was commenced. (*Grimm, supra,* 188 Cal.App.3d at pp. 870-871.) This holding in *Grimm* is not dependent upon any analysis under section 356 that was discredited in *Woods.* Rather, it represents a resolution of the actual issues that were before the court in *Grimm,* upon a valid ground, i.e., statutory interpretation of section 364. (See *Ginns, supra,* 61 Cal.2d at p. 524, fn. 2.)

Moreover, just as in *Woods, supra,* 53 Cal.3d at page 325, in construing these statutes, we must "consider both the context in which section 364 was enacted and the legislative objective." (*Woods, supra,* at p. 325.) Section 364, subdivision (e) provides that its terms, such as subdivision (a), "shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474." Accordingly, no special rules are established by section 364 for Doe defendants, except to the extent that we must interpret that section as a whole to effectuate its overall statutory purpose. When we read section 364 together with section 474, we believe Camarillo's proposed course of action for the Defendant Attorneys under these circumstances would be an absurd and illogical interpretation of the provisions of those sections. We disagree with her position that section 364, subdivision (d) does not effectively toll or extend the statute of limitations period against a potential defendant who has not been served with a section 364, subdivision (a) notice, especially where that potential defendant cannot be so served because his or her identity is unknown; we further disapprove her theory that a Doe complaint had to be filed on her behalf under these particular circumstances, in order to meet a professional duty of care.

Specifically, Defendant Attorneys were faced with an impending running of the statute of limitations period, and they properly took action to preserve the potential client's claim as against those defendants who were known to her. This gave Camarillo a window of opportunity to negotiate with such persons, if it came to that. It would be impossible for her or for any attorney she might hire to negotiate with an unknown person, and hence the notice requirement of section 364 never came into play as to unknown defendants.

The statutory purpose of section 364, promoting negotiation, cannot apply when the plaintiff does not know the identity of the person with whom she might want to negotiate. Even though section 364, subdivisions (a) and (d) do not expressly refer to unserved, unknown defendants, those subdivisions are properly to be construed as providing a solution to that particular problem. The only commonsense interpretation that reconciles sections 474 and 364 is one that finds that as to unknown defendants, the limitations rules must acknowledge that section 364 notices can only be given to known defendants, and that here, no further action was required of these Defendant Attorneys to preserve Camarillo's right of action against the unknown delivery doctor.

Accordingly, the Defendant Attorneys could properly undertake to file the section 364 notice as to known potential defendants, while not undertaking to file an actual complaint naming potential Doe defendants under section 474. To require them to do so would be inconsistent with the factual and procedural posture of the case, that Camarillo was asking the Defendant Attorneys whether they would take her case, and they maintained the right to decide whether or not to do so. By undertaking to preserve her right of action against known defendants, by sending the section 364 notice, they did not fail to preserve her right of action against unknown defendants. They took a valid course of action under the statutes and under the existing authority, such as *Grimm*, *Woods*, and their progeny, and they may not be charged here with legal malpractice.

E

*Special Considerations Regarding Breach of Fiduciary Duty*

 We have rejected above Camarillo's arguments that the Defendant Attorneys missed the statute of limitations as against the delivery doctor and negligently failed to tell her so. In addition, Camarillo argues that even if her argument in that respect fails, the Defendant Attorneys still breached fiduciary duties in the manner in which they dealt with her after sending her the letter declining to take her case. Specifically, after receiving the section 364 notice, Camarillo telephoned Defendant Attorney Morse to discuss it, and Morse allegedly told her neither she nor her son had a good case, and Morse was reluctant to sue the delivery doctor, who was or seemed to be a nice guy.

As a threshold matter, we first note that it is inconsistent for plaintiff's attorney to stipulate that the Defendant Attorneys did not know who the delivery doctor was, while also contending that at the same time, they referred to him as a nice guy and refused to sue him. Although there was a live factual dispute up until the date of trial about whether Dr. Flickinger

was the delivery doctor, we should not focus upon any belief on the part of Defendant Attorneys about his character, or any other doctor's, for that matter. Rather, we must look to whether the Defendant Attorneys negligently performed a professional duty that they actually had undertaken on behalf of Camarillo. At the time the alleged statements were made about the doctor being a nice guy, the Defendant Attorneys had already sent Camarillo a letter declining to take her case, advising her to obtain other counsel and to take action to avoid missing the statute of limitations on her personal claim. When she called the Defendant Attorneys' office to talk to them about this letter, they did not somehow revive any duty toward her to take her case or to advise her further on it, by the simple acts of agreeing to talk to her or explaining to her why they did not take the case. Rather, the comments that were made about whether she and her son had a good case and about whether the doctor was a nice guy were consistent with the position the letter had clearly taken, to decline to take the case, and Camarillo cannot be heard to argue that these actions somehow breached existing fiduciary duties owed to her at that time.

In conclusion, summary judgment was properly granted for the defense in this legal malpractice action.

## IV

### Defendant Attorneys' Motion for Sanctions on Appeal*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Judgment affirmed. Sanctions are denied. Camarillo to pay all costs on appeal.

McIntyre, J., and McConnell, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 2003. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote 1, *ante,* page 552.