Filed 9/4/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| STEVEN MEADS et al., | C099765 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. CVCV22-721) |
| v. | |
| JED DRIGGERS et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Siskiyou County, Karen Dixon, Judge. Affirmed.

Dohn R. Henion for Defendants, Cross-complainants and Appellants.

Carr, Kennedy, Peterson & Frost, Randall C. Nelson and Patrick M. Hensleigh for Plaintiffs, Cross-defendants and Respondents.

The issue in this appeal is whether a cross-complaint filed by Jed Driggers and Afterburner, LLC, against Steven Meads and Penny Lipking-Meads was properly dismissed pursuant to Code of Civil Procedure section 425.16, also known as the anti-

1

SLAPP statute.[1]  A so-called SLAPP suit is subject to dismissal unless the plaintiff or cross-complainant can demonstrate there is probability it will prevail on the challenged claims; in this case, resolution of that issue depends on whether a limited liability company's members may agree to waive their right to seek judicial dissolution in certain statutorily defined circumstances.  We conclude they may not, which also means the cross-complainants cannot demonstrate a probability of prevailing on their claims.  We thus affirm the trial court's order striking the cross-complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

For many years, Steven Meads and Penny Lipking-Meads (collectively, the Meadses) owned and operated a business that included liquor sales, a service station, and a convenience store.  They ran the business as a sole proprietorship and lived off the income it generated.

In 2010, the Meadses met Driggers and ultimately agreed to partner with him to expand and operate the business.  The parties agreed the Meadses would contribute their liquor license, the goodwill of the business, certain personal property, the real property on which the business was run, and cash, and Driggers would contribute his "know-how" and "initial operating capital."  The Meadses would receive 49 percent of the net profits from the business, and Driggers would receive 51 percent.  Driggers told the Meadses that, while the business was expanding, they would receive monthly income from the business as a draw, and once the business was up and running in three to five years, "each party would simply take their portion of the profits from the business."

---

[1]    SLAPP stands for strategic litigation against public participation (see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1 (*Navellier*)), and a SLAPP suit is one that contains claims "arising from" the defendant's (or, in this case, cross-defendant's) exercise of the constitutional right to free speech or to petition the government for the redress of grievances (Code Civ. Proc., § 425.16, subd. (b)(1)).

Driggers hired an attorney to prepare the documents necessary to effectuate the parties' agreements, and the Meadses signed each document without seeking the advice of their own counsel because they trusted Driggers. Among other things, the documents created Afterburner, LLC (the LLC), to run the business. The Meadses and Driggers were members of the LLC, and Driggers also was the manager. In late 2011, the business was expanded and began operating under a new name.

A decade later, the Meadses contend Driggers had improperly diverted monies from the business that should have been considered profits and split accordingly. In July 2022, they filed a lawsuit against Driggers and the LLC that included a cause of action seeking to dissolve the LLC.[2] In support of the dissolution cause of action the Meadses alleged (1) it was no longer reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement, (2) dissolution was reasonably necessary to protect their rights or interests, and (3) those in control of the LLC (i.e., Driggers) had been guilty of or knowingly countenanced fraud, mismanagement, or abuse of authority. As discussed in more detail below, a court may dissolve a limited liability company in all of these circumstances pursuant to an action filed by a member. (See Corp. Code, former § 17351, subd. (a); Corp. Code, § 17707.03, subds. (a), (b).)

Driggers and the LLC (collectively referred to as Driggers) filed a cross-complaint against the Meadses for breach of contract and breach of fiduciary duty, and it is the cross-complaint that is the subject of this appeal. Both causes of action in the cross-complaint were based on a provision in the LLC's operating agreement that stated the LLC shall be dissolved only upon the occurrence of one of two "Events of Dissolution"—(1) "The vote of the Members" to dissolve the LLC, or (2) "The

---

[2] The complaint included eight other causes of action against Driggers and two other defendants. The other causes of action and defendants are not relevant to the issues presented in this appeal and we thus do not discuss them.

3

bankruptcy or insolvency of the LLC." The provision also stated, "Notwithstanding anything in Cal. Corp. Code §§ 17350 and 17351 to the contrary, the foregoing Events of Dissolution are the exclusive events which may cause the LLC to dissolve. *Each of the Members hereby agrees not to take any other voluntary action that would cause the LLC to dissolve*, notwithstanding any provision of the [Beverly-Killea Limited Liability Company] Act to the contrary." (Italics added.) (We will discuss Corp. Code, former §§ 17350 & 17351 and the Beverly-Killea Limited Liability Company Act below.) Driggers refers to this provision as the "waiver" provision, because it effectively waives the right to seek judicial dissolution in statutorily defined circumstances, and we will generally refer to it as the waiver provision as well. In a nutshell, Driggers claimed the Meadses breached both the operating agreement and their fiduciary duties by filing a lawsuit seeking to dissolve the LLC in violation of their agreement "not to take any . . . voluntary action that would cause the LLC to dissolve."

The Meadses filed a motion to strike the cross-complaint pursuant to the anti-SLAPP statute, arguing it arose out of their right to petition the government for redress of grievances, and Driggers could not demonstrate a probability of prevailing because the waiver provision was unlawful and/or violated public policy.[3] Driggers opposed the motion, arguing the waiver provision was lawful.

The trial court granted the motion and ordered the cross-complaint stricken. At the hearing on the motion, the trial court stated it found the cross-complaint was based on protected activity, and also stated, "I am not finding that there is a probability that Mr. Driggers would prevail on the claim. [¶] . . . I am not finding that he won't, but I believe that the Court is required to make a weighing of the probability. I'm finding at this point

---

[3] The Meadses also argued the cross-complaint was barred by the litigation privilege, and they repeat that argument here. Given our conclusion in this case, we need not and do not address this argument.

it's equal."  The trial court thereafter issued a short written order finding:  (1) "The cross-complaint . . . arises out of cross-defendants' filing of the complaint, which is an act in furtherance of their right of petition"; and (2) "Cross-defendants have not proven they have a probability of prevailing on the merits [of] the cross-complaint."

Driggers filed a timely notice of appeal.

## DISCUSSION

## I

## The Anti-SLAPP Statute and the Standard of Review

Code of Civil Procedure section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."[4]  (Code Civ. Proc., § 425.16, subd. (b)(1).)  Courts frequently to refer to acts in furtherance of a person's right of petition ort free speech as "protected activity."  (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Resolution of a special motion to strike, also referred to as an anti-SLAPP motion, "requires the court to engage in a two-step process."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  "First, 'the moving [cross-defendant] bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the [cross-defendant] has engaged.'  [Citation.]  Second, for each claim that does arise from protected activity, the [cross-complainant] must show the claim has

---

[4]     "For purposes of [section 425.16], 'complaint' includes 'cross-complaint' . . . , 'plaintiff' includes 'cross-complainant' . . . , and 'defendant' includes 'cross-defendant.' " (Code Civ. Proc., § 425.16, subd. (h).)

'at least "minimal merit." ' [Citation.] If the [cross-complainant] cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1009.) "The anti-SLAPP statute does not insulate [cross-defendants] from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra*, 29 Cal.4th at p. 89.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) When review is de novo, we may affirm the trial court's order "if it is correct on any ground, regardless of the trial court's reasoning." (*R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 154.)

## II

## Analysis

*A.     The cross-complaint arises from protected activity.*

The trial court found both causes of action in the cross-complaint arose from protected activity, and we agree.[5]

"The filing of a complaint is a protected activity under the anti-SLAPP statute (the right to petition)." (*Joslin v. Third Laguna Hills Mutual* (2020) 49 Cal.App.5th 366, 369; see also *Navellier, supra*, 29 Cal.4th at p. 90 [filing counterclaim is protected activity].) The Meadses thus engaged in protected activity when they filed their complaint against

---

[5]     It appears Driggers agrees as well, because he acknowledges the Meadses "concededly met their burden on the first prong-of the Anti-SLAPP analysis."

Driggers.  The question then becomes whether the causes of action asserted in the cross-complaint arise from that protected activity.  They do.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the [cross-defendant's] act underlying the [cross-complainant's] cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Park, supra*, 2 Cal.5th at pp. 1062-1063.)  In determining whether a claim arises from protected activity, we first identify "the allegedly wrongful and injury-producing conduct that provides the foundation for the claims," and then determine whether that conduct constitutes protected activity. (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491.)  "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of."  (*Park*, at p. 1060.)

Here, the Meadses are being sued precisely because of the claim they filed against Driggers seeking judicial dissolution of the LLC, in contravention of the operating agreement's provision prohibiting a member from taking voluntary action to dissolve the LLC.  The filing of the dissolution claim is thus "the wrong complained of" in the cross-complaint.  (*Park, supra*, 2 Cal.5th at p. 1060.)  Put another way, "but for" the Meadses' claim for judicial dissolution, there would be no basis for the cross-complaint, and the cross-complaint "therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong."  (*Navellier, supra*, 29 Cal.4th at p. 90.)

### B.   *Driggers cannot establish a probability of prevailing*

Because the Meadses have shown the claims in the cross-complaint arise from protected activity, the burden shifts to Driggers to show there is a probability he will prevail on his claims.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  "[T]he [cross-complainant's] burden of establishing a probability of prevailing is not high:  We do not weigh credibility, nor do we evaluate the weight of the evidence.  Instead, we accept as true all evidence favorable to the [cross-complainant] and assess the [cross-defendant's]

7

evidence only to determine if it defeats the [cross-complainant's] submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) As relevant here, "[cross-complainants] must also overcome any 'substantive defenses' to their claim." (*Six4Three, LLC v. Facebook, Inc.* (2025) 109 Cal.App.5th 635, 654.)

The Meadses contend there is a substantive defense to the claims asserted against them—namely, that the waiver provision on which both claims are based is unlawful, void, or otherwise violates public policy and is thus unenforceable. Driggers, in contrast, contends the provision is lawful and enforceable. This raises a legal question rather than a pleading question or an evidentiary question. (See *Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1126 [" 'Whether a contract is illegal . . . is a question of law' "]; *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1256-1257 ["whether a contract provision is illegal or contrary to public policy 'is a question of law to be determined from the circumstances of each particular case' "].) We agree with the Meadses that the waiver provision is unenforceable.

The Beverly-Killea Limited Liability Company Act (the Beverly-Killea Act), Corporations Code former section 17000 et seq., was enacted in 1994 to authorize and govern the formation and operation of limited liability companies. In 2014, it was replaced by the California Revised Uniform Limited Liability Company Act (the Revised Act), Corporations Code section 17701.01 et seq.[6] (See *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1485-1486 [recounting history of both acts].) The Revised Act expressly states it "applies only to . . . an operating agreement . . . entered into by the limited liability company or by the members or managers of the limited liability company, on or after January 1, 2014," and that "prior law governs . . . any operating

---

[6]     Further undesignated statutory references are to the Corporations Code.

8

agreement . . . entered into . . . prior to January 1, 2014." (§ 17713.04, subd. (b).) The term " 'prior law' " is defined as the Beverly-Killea Act "as it read on December 31, 2013." (§ 17713.04, subd. (e).) Because the operating agreement at issue in this case was entered into in 2011, it is governed by the Beverly-Killea Act rather than the Revised Act.[7]

Former section 17005, subdivision (a), provides, "Except as provided in subdivisions (b) and (c), relations among members and between the members and the limited liability company are governed by the articles of organization and operating agreement." Former section 17005, subdivision (c), in turn, provides, "The provisions of . . . Chapter 8 (commencing with Section 17350) . . . may be varied by the articles of organization or by a written operating agreement *only to the extent expressly provided in those chapters*." (Italics added.) Former chapter 8 deals with dissolution. Former section 17350 provides, "A limited liability company shall be dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: [¶] (a) At the time specified in the articles of organization, if any, or upon the happening of the events, if any, specified in the articles of organization or a written operating agreement. [¶] (b) By the vote of a majority in interest of the members, or a greater percentage of the voting interests of members as may be specified in the articles of organization or a written operating agreement. [¶] (c) *Entry of a decree of judicial dissolution pursuant to Section 17351*." (Italics added.)[8] Finally, former section 17351, subdivision (a),

---

[7]     We thus need not address the Meadses' argument that section 17701.10, which is part of the Revised Act, prohibits the waiver provision at issue in this case.

[8]     When enacted in 1994, former section 17350, subdivision (d) read, "Except as otherwise provided in the articles of organization or a written operating agreement, upon the death, withdrawal, resignation, expulsion, bankruptcy, or dissolution of a member, unless the business of the limited liability company is continued by a vote of all the

provides, "Pursuant to an action filed by any manager or by any member or members, a court of competent jurisdiction may decree the dissolution of a limited liability company whenever any of the following occurs: [¶] (1) It is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. [¶] (2) Dissolution is reasonably necessary for the protection of the rights or interests of the complaining members. [¶] (3) The business of the limited liability company has been abandoned. [¶] (4) The management of the limited liability company is deadlocked or subject to internal dissention. [¶] (5) Those in control of the company have been guilty of, or have knowingly countenanced persistent and pervasive fraud, mismanagement, or abuse of authority."

We must interpret all of these provisions together and give effect to each of them. (See *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805 [when interpretating statutes courts must " 'construe them to give force and effect to all of their provisions' "]; *Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 [" ' 'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous' ' "].) Former section 17350 provides a limited liability company shall be dissolved upon the entry of a decree of judicial dissolution pursuant to former section 17351, and former section 17351 specifies five circumstances in which a court may dissolve a limited liability company pursuant to an action filed by a member. Critical to our analysis, former section 17005 states the provisions of former chapter 8, which includes former sections 17350 and

---

remaining members within 90 days of the happening of that event." (Stats. 1994, ch. 1200, § 27, p. 7332.) We note, this is an example of a provision in former chapter 8 that may be varied by the operating agreement, because the phrase "[e]xcept as otherwise provided in the . . . operating agreement" "expressly provide[s]" for such variance. In other words, the default rule is that a limited liability company shall be dissolved upon the death, withdrawal, resignation, expulsion, or bankruptcy of a member, but the parties are free to draft an operating agreement that provides the limited liability company will *not* be dissolved in those circumstances.

17351, "may be varied by . . . a written operating agreement only to the extent expressly provided" in that chapter. Nothing in former chapter 8 expressly provides that an operating agreement may vary the circumstances in which a court may enter a decree of judicial dissolution. We thus hold that an operating agreement may not vary—or waive—a member's right to seek judicial dissolution in the circumstances identified in former section 17351.

Driggers argues the parties are free to waive the right to seek judicial dissolution in the circumstances identified in former section 17351. We disagree.

A contract or agreement that is "[c]ontrary to an express provision of law" is unlawful. (Civ. Code, § 1667.) Similarly, a contract or agreement, or any portion thereof, that violates the law is void and unenforceable. (See *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1372 ["An agreement that violates the law is void and unenforceable"]; Civ. Code, § 1599 ["Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest"].) Here, the law in question is the Beverly-Killea Act, and as discussed above, it does two things: (1) it provides a court may decree the dissolution of a limited liability company in five specified circumstances (former § 17351, subd. (a)); and (2) it states the provision regarding judicial dissolution "may be varied . . . by a written operating agreement only to the extent expressly provided" therein (former § 17005, subd. (c)). Moreover, it does not "expressly provide[]" that the provision regarding judicial dissolution may be varied by a written operating agreement. Here, however, the operating agreement's waiver provision effectively varies (or, more accurately, *eliminates*) the power of a court to decree dissolution in the circumstances specified in the Beverly-Killea Act because it prohibits a member from seeking judicial dissolution in those circumstances. The waiver provision is thus "[c]ontrary to an express provision of law" and is void and unenforceable. (Civ. Code, § 1667.)

Driggers cites *Navellier, supra*, 29 Cal.4th at page 94 for the proposition that "a defendant [or cross-defendant] who in fact has *validly* contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."[9] (Italics added.) The key word in that sentence is "validly." As we have just explained, the Beverly-Killea Act does not allow the members of a limited liability company to waive the right to seek judicial dissolution, and the Meadses thus did not *validly* contract not to petition.

Driggers argues that, by their anti-SLAPP motion, the Meadses "seek[] to immunize themselves from liability for their breach of the operating agreement." Not so. As our Supreme Court explained in *Navellier*, "the anti-SLAPP statute neither constitutes—nor enables courts to effect—any kind of 'immunity' for breach of a release or of other types of contracts affecting speech" or petitioning activity, and a breach of contract claim that arises from protected activity "is not subject to being stricken as a SLAPP" so long as it is legally sufficient and has minimal merit. (*Navellier, supra*, 29 Cal.4th at p. 93.) "The Legislature's inclusion of a merits prong to the statutory SLAPP definition [citation] thus . . . preserves appropriate remedies for breaches of

---

[9] *Navellier* involved the validity of a general release (*Navellier, supra*, 29 Cal.4th at p. 86), not the validity of provision in a limited liability company's operating agreement. The defendant in that case signed a general release of claims in connection with a federal lawsuit, and thereafter filed several counterclaims against the plaintiffs in that lawsuit. (*Ibid*.) The federal court dismissed the counterclaims based on the release, and the plaintiffs then filed a complaint against the defendant in state court, alleging he breached the release by filing the counterclaims. (*Id*. at pp. 86-87.) The defendant filed an anti-SLAPP motion, the trial court denied the motion, the appellate court affirmed because it found "that this action falls outside the scope of the 'arising from' prong of the anti-SLAPP statute" (*id*. at p. 87), and our Supreme Court reversed (*id*. at p. 96). The court held the complaint arose from protected activity because, "[i]n alleging breach of contract, plaintiffs complain about [the defendant's] having filed counterclaims in the federal action." (*Id*. at p. 90.) Because the appellate court did not consider whether the plaintiff stated and substantiated a legally sufficient claim, the court remanded the case to permit it to do so in the first instance. (*Id*. at p. 95.)

contracts involving speech by ensuring that claims with the requisite minimal merit may proceed." (*Id*. at p. 94.) Again, we find the cross-complaint lacks the requisite minimal merit because the waiver provision on which it is based is contrary to law, void, and unenforceable.

Driggers cites Civil Code section 3513, albeit with no discussion. It provides, "Any one may waive the advantage of a law intended solely for their benefit. But a law established for a public reason cannot be contravened by a private agreement." Presumably Driggers's point is that former section 17351—which specifies the circumstances in which a court may decree judicial dissolution of a limited liability company—is (or was) a law intended solely for the benefit of members of a limited liability company rather than for a public purpose, and those members are thus free to waive the advantage of that law by "bargain[ing] away" their right to seek judicial dissolution. If we were to interpret former section 17351 in a vacuum, we might find this argument persuasive, but, as previously noted, we must interpret it as part of the whole Beverly-Killea Act, which includes former section 17005. And former section 17005 states the provisions of former chapter 8, including former section 17351, "may be varied . . . only to the extent expressly provided" therein. Because former section 17351 does not provide (expressly or otherwise) for the variance of its provisions, former section 17005 effectively prohibits members of a limited liability company from bargaining away their right to seek judicial dissolution. The rule that anyone may waive the advantage of a law intended for his or her benefit is subject to an important caveat: " '[U]nless otherwise prohibited by specific statutory provisions.' " (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1048; see also *Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1030 ["statutory benefit may be waived if," among other things, "the statute does not prohibit waiver"].) Here, former section 17005 is a specific statutory provision that effectively prohibits waiver of a member's right to seek judicial dissolution in the circumstances identified in former section 17351.

13

We also note that accepting Driggers's argument would do more than merely hold the members of a limited liability company are free to waive their right to seek judicial dissolution in the circumstances identified in former section 17351. It would also allow the members of a limited liability company to ignore former section 17005, subdivision (c), which states the provisions of former section 17351 "may be varied by . . . a written operating agreement only to the extent expressly provided" therein. We do not believe the rule that anyone may waive the advantage of a law intended solely for their benefit also permits parties to ignore a statutory provision that prohibits an operating agreement from varying certain provisions in the Beverly-Killea Act. In other words, if a statute says, "an operating agreement shall not do X," the parties are not free to ignore that statute by citing the rule that any person may waive the advantages of a law enacted for their benefit.

Finally, Driggers appears to argue the waiver provision does not vary "the power of the *court* to decree the LLC's dissolution" in the circumstances identified in former section 17351; instead, it merely prohibits "the contracting *parties*" from taking voluntary action to dissolve the LLC in those circumstances. This argument elevates form over substance, in contravention of Civil Code section 3528 and well-established judicial principles. (Civ. Code, § 3528 ["The law respects form less than substance"]; *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 320 ["A general principle of statutory construction is that courts do not place form over substance"]; *Camarillo v. Vaage* (2003) 105 Cal.App.4th 552, 568 ["statutes must be interpreted in a way that does not elevate form over substance"].) Former section 17351 only permits a court to decree dissolution "[p]ursuant to an action filed" by a member. Prohibiting a member from filing such an action thus also effectively varies the power of the court to decree dissolution in the circumstances identified in former section 17351.

14

## DISPOSITION

The order granting the Meadses' anti-SLAPP motion is affirmed, and the Meadses shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
ROBIE, J.


_____/s/_____
WISEMAN, J.*


---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.