[No. B196182. Second Dist., Div. Eight. Oct. 29, 2008.]

ANDREW S. GOMBINER, Plaintiff and Appellant, v.
DANIEL B. SWARTZ et al., Defendants and Respondents.

COUNSEL

Leo A. Schwarz for Plaintiff and Appellant.

Levinson Arshonsky & Kurtz and James S. Cooper for Defendants and Respondents.

## OPINION

**RUBIN, J.**—Tenant Andrew S. Gombiner appeals from the court's judgment following a trial involving his residential lease of a home owned by landlord Daniel B. Swartz. Because the trial court erroneously found Los Angeles's Rent Stabilization Ordinance (L.A. Mun. Code, § 151.00 et seq.) did not apply to the dispute, we reverse and remand.

### FACTS AND PROCEEDINGS

In 1997, landlord Daniel B. Swartz (landlord) converted the house he owned at 1314 Sunset Plaza Drive in Los Angeles into two residential units designated as 1400 and 1314 Sunset Plaza Drive.[1] In January 1998, tenant Andrew S. Gombiner (tenant) signed a two-year lease for 1400 Sunset Plaza Drive, agreeing to pay $3,500 per month for the first year and $4,000 per month for the second. At the time, landlord did not tell his new tenant that the structure's ground floor was landlord's separate residence in which he was living under the address 1314 Sunset Plaza Drive.

In July 1998, tenant sued landlord for fraud and related causes of action for misrepresenting the property as a single-family home by not disclosing the

---

[1] Swartz is a party to these proceedings as an individual and in his capacity as trustee for the Swartz Trust Agreement Dated December 20, 1986. His separate roles are immaterial to the course of the proceedings or our analysis, and therefore we refer to him simply as Swartz or the landlord.

building's second residence. (*Gombiner v. Swartz* (Super. Ct. L.A. County, 2000, No. BC194275).) In February 2000, the parties settled the lawsuit. Under their settlement, landlord paid tenant $25,000. In addition, they signed Amendment No. 1 to their lease, extending the term of the lease 18 months to August 2001 while leaving the rent at $4,000 per month. As part of the settlement, tenant promised not to complain to any governmental authorities about matters covered by the settlement, and promised not to interfere with landlord's efforts to restore the property to a single-family residence. In July 2001, both parties signed Amendment No. 2 to the lease, raising the monthly rent to $5,900 and making the lease terminable by either party upon 90 days' notice.

In January 2004, troubles reemerged between landlord and tenant. Expressing displeasure with landlord's delay in repairing his broken water heater, tenant paid to fix the heater and deducted the repair costs from that month's rent. Demanding that tenant pay his rent in full, landlord assessed a charge of $300 against tenant for late payment of rent; the lease allowed, however, a late fee of only $25.

Following landlord's demand, tenant informed landlord that he believed the Rent Stabilization Ordinance of the City of Los Angeles (RSO) applied to the property, making landlord's unilateral increase in the late payment fee illegal. In addition, tenant insisted that landlord reimburse tenant for $83,400 in unauthorized rent increases that landlord had collected from tenant in violation of the RSO. Landlord reacted by serving tenant with a three-day notice to pay the $300 late fee or quit the property. Landlord also simultaneously exercised his right to give tenant a 90-day notice of termination of the lease. When giving notice, landlord told tenant that if tenant "approaches the City or any related governmental agency regarding the Premises [tenant] will be liable for return of the $25,000 settlement payment and further subject to a $25,000 penalty for breaching the Settlement Agreement."

A little over a week later, tenant sued landlord. We refer to this lawsuit as "the civil action" to distinguish it from the unlawful detainer action between the parties. The gist of tenant's complaint was landlord had violated the RSO by overcharging tenant for rent. Landlord cross-complained, alleging causes of action against tenant for breach of the settlement agreement and for promissory fraud from tenant's undisclosed intention not to adhere to the settlement agreement. In addition to cross-complaining, landlord filed an unlawful detainer action against tenant to regain possession of the property.

While the civil action remained pending, the Honorable Judith Abrams presided over the unlawful detainer trial in August 2004. Judge Abrams found landlord had spent tens of thousands of dollars (and possibly more) to create

two separate residential units within the erstwhile single-family structure. Each unit had its own full kitchen, laundry area, driveway, mailbox, and garbage pickup location. Landlord and tenant used separate entries and exits, had their own telephone and cable television lines, and did not interact while in their homes. Based on the property's condition and use, Judge Abrams found the building was a duplex. Entering judgment for tenant, Judge Abrams ruled the duplex was subject to the RSO, which limited rent increases to approximately 3 percent a year during the period at issue in these proceedings. In November 2005, the appellate department of the superior court affirmed Judge Abrams's ruling. In doing so, it noted "the residence did not retain its essential character as a single-family residence. Substantial remodeling was done to create two truly separate and complete units."

Following his victory in the unlawful detainer trial, tenant stopped paying rent to offset the unauthorized excess rent that landlord had collected from him. In crediting past overpayments against his current rent obligation, tenant relied on the authority of *Minelian v. Manzella* (1989) 215 Cal.App.3d 457 [263 Cal.Rptr. 597], which permitted a tenant to recover unauthorized excess rent payments by withholding current rent. (*Id.* at pp. 460, 464.) Landlord thereafter filed a second unlawful detainer action against tenant. In response, tenant filed a first amended complaint in the civil action adding a cause of action for retaliatory eviction and pleading the res judicata effect of Judge Abrams's finding that the property was a duplex subject to the RSO.

In February 2006, the parties stipulated to a bifurcated court and jury trial in the civil action before the Honorable Mary Ann Murphy, whose rulings and judgment are at issue in this appeal. As to nonjury matters, they agreed the trial court could rely on the parties' briefs to decide the legality under the RSO of the rent increases in the February 2000 settlement agreement and lease amendments. They further agreed the court could decide based on the parties' evidence whether landlord had restored the property to a single-family residence exempt from the RSO.

The court trial—named "Phase 1" by the parties—took place in February and March 2006. At the end of Phase 1, the court found the February 2000 settlement and two lease amendments did not violate the RSO because the parties were sophisticated professionals who knew about the ordinance and had negotiated their agreements at arm's length represented by counsel and "supervised" by a retired superior court judge. The court also found landlord had restored the property to a single-family residence as of November 17, 2004. Based on the trial court's findings in Phase 1, landlord filed a second amended cross-complaint adding a cause of action for breach of the lease. He argued tenant's refusal to pay rent since Judge Abrams's ruling in August 2004 lacked legal justification because Phase 1 established the lawfulness of those increases.

Phase 2 of the trial was tried to a jury. Based on its Phase 1 rulings, the court prohibited tenant from informing the jury that Judge Abrams had found the rent increases violated the RSO. To the contrary, the court instructed the jury that the negotiated rent increases in the settlement agreement and second lease amendment meant tenant could not claim that he overpaid rent. In addition, the court barred tenant from telling the jury that he had withheld rent payments to offset the rent increases. The court reasoned that tenant had assumed the risk of his own "error in judgment" in choosing not to pay rent based on Judge Abrams's findings and he must live with the consequences of his error.

The jury issued a verdict with interrogatories. It found landlord breached the lease by overcharging tenant $825 in late fees in 2004, and awarded tenant statutory damages of three times the overcharge. It also found landlord had retaliated against tenant for exercising his rights, but determined tenant suffered no damages from the retaliation. The jury further found that for his part tenant had breached the lease by not paying $178,500 in back rent. The jury also found tenant had breached either the "do not report" or "do not interfere" (or both) provisions of the settlement agreement, entitling landlord to a refund of the $25,000 he paid under the settlement plus an additional $25,000 in damages. After calculating prejudgment interest, attorney's fees and costs, the court awarded a net recovery to landlord of more than $453,000. This appeal followed.

## DISCUSSION

### 1. *Illegality of Rent Increases*

In the unlawful detainer action, Judge Abrams found the property was a duplex. The unlawful detainer action arose from landlord's service of a 90-day notice to tenant to terminate the tenancy and move out. Judge Abrams concluded the property was a duplex based on evidence of the property's condition that the parties introduced during the unlawful detainer trial. The property's status as a duplex was important because it answered what Judge Abrams called "the only issue at trial [which] was whether the subject property is or is not subject the RSO." Judge Abrams's factual findings about the property included the following:

—The property had two addresses.

—Each unit had its own full kitchen. Tenant's kitchen contained a refrigerator, sink, dishwasher, microwave, double-oven and stove, cabinets, and related small appliances. Landlord's kitchen contained a refrigerator, sink, dishwasher, microwave, cooktop, and cabinets.

—Tenant's unit was about 3,305 square feet, with four bedrooms, a den, three and one-half bathrooms, a living room, dining room, laundry, and billiard room.

—Landlord's unit was about 1,100 square feet, with its own living room, bedroom, closet, and bathroom.

—The occupant of each unit had no right of access to the other unit.

—Each unit had its own mailbox.

—Each unit had its own driveway and curbside address.

Based on the foregoing facts, Judge Abrams found "the Property is a duplex and . . . is being used as a duplex." Because the property was a duplex, she concluded Los Angeles's RSO applied to it. And because the RSO applied, she concluded landlord's 90-day termination notice to tenant was invalid since it violated the RSO.

The appellate department of the superior court affirmed Judge Abrams's decision, and landlord suggests no basis for attacking her decision. The trial court here nevertheless rejected Judge Abrams's findings out of hand, declaring it would not be considering them. Denying any collateral estoppel value whatsoever to Judge Abrams's findings, Judge Murphy told the parties: "First of all, another superior court's opinion I would not be considering. It's not precedent. It's not the Court of Appeal. [And because the appellate department's decision was unpublished] it is not something I have to follow."

■ The res judicata effect of an unlawful detainer proceeding is narrow, but is not nonexistent. Generally speaking, an unlawful detainer judgment has limited res judicata force because it typically follows a summary proceeding focused only on deciding a party's right to immediate possession of property. (*Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557 [230 Cal.Rptr. 253].) But when litigants to an unlawful detainer proceeding fully try other issues besides the right of possession, the unlawful detainer judgment is conclusive as to those other litigated issues. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 256–257 [142 Cal.Rptr. 414, 572 P.2d 28]; *Pelletier v. Alameda Yacht Harbor, supra*, at p. 1557.) Here, the parties litigated to final judgment the RSO's applicability to the property. The RSO imposes a statutory cap on the amount of rent a landlord may collect. (L.A. Mun. Code, §§ 151.04, subd. A ["It shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to this chapter or regulation or orders adopted pursuant to this chapter."], 151.10, subd. B [violation of RSO a misdemeanor].) The trial court therefore erred here in

disregarding the effect of Judge Abrams's findings as they applied to the RSO's limits on the amount of rent landlord could collect from tenant.

 The trial court compounded its error when it concluded the parties could by mutual agreement exempt the property from the RSO's requirements in their February 2000 settlement and amendments to the lease. The RSO prohibits any person from "accept[ing] or retain[ing]" rent that exceeds the rent set under the RSO's provisions. (L.A. Mun. Code, § 151.10, subd. A; see also L.A. Mun. Code, § 151.04, amended effective Apr. 11, 2002 ["unlawful for any landlord to . . . accept or retain more than the maximum adjusted rent permitted" under the RSO].) It follows that a landlord cannot, even with the tenant's acquiescence or by mutual agreement, circumvent that which the law prohibits.[2] An agreement that violates the law is void and unenforceable. (Civ. Code, §§ 1598, 1599 [any portion of contract that violates law is void]; *id.*, § 3513 ["[A] law established for a public reason cannot be contravened by a private agreement."]; see, e.g., *Gruzen v. Henry* (1978) 84 Cal.App.3d 515, 517 [148 Cal.Rptr. 573] [because property did not have city of Pasadena certificate of occupancy, rental agreement was void in unlawful detainer proceeding when Pasadena ordinance criminalized leasing uncertificated property].)[3]

Landlord asserts the rent increases under the settlement agreement and lease amendments are enforceable because parties may settle lawsuits involving rent control. (*City of Los Angeles v. Superior Court* (1985) 170 Cal.App.3d 744, 748, fn. 3 [216 Cal.Rptr. 311]; see *Credit Finance Corp. v. Mox* (1932) 125 Cal.App. 583 [13 P.2d 937] [settlement of case involving usury, recognizing usury, like rent control, is legally regulated in the public interest].) Landlord's assertion fails, however, because it glosses over the difference between settling a dispute over, for example, the calculation of the correct amount of a rent increase versus a settlement in which violation of the ordinance is itself an element of the settlement. (See, e.g., *Credit Finance Corp. v. Mox, supra*, 125 Cal.App. 583 [recognizes distinction between settlement of usury claim versus entering into a usurious settlement].)

---

[2] Tenant cites a nonwaiver provision of the RSO's Tenant Habitability Program (L.A. Mun. Code, § 152.00 et seq.) to the same effect (see L.A. Mun. Code, § 152.07, subd. F), but we have not relied upon that ordinance in our analysis because, as landlord correctly notes, it went into effect in May 2005, after the events at issue here occurred. (<http://www.amlegal.com/nxt/gateway.dll?f=templates&fn=default.htm&vid=amlegal:losangeles_ca_mc> [as of Oct. 29, 2008].)

[3] *Gruzen v. Henry, supra*, 84 Cal.App.3d at page 518 explained: " 'The fact that the statute or ordinance prescribes a penalty for doing the prohibited act but does not expressly state that contracts entered into in violation of the statute or ordinance are void is immaterial. The agreement is void whether the act is *malum in se* or merely *malum prohibitum.*' "

By misperceiving the parties' having a right to exempt the duplex from the RSO's limits on lawful rent, the court misinstructed the jury. First, the court instructed the jury that the settlement agreement meant tenant could not claim landlord charged more rent than the RSO allowed. The court's misinstruction eviscerated tenant's cause of action to recover excess rent paid in violation of the RSO. Second, the court barred tenant from arguing to the jury that he had withheld rent to recover his rent overpayments. That misinstruction made landlord's victory in his cause of action for breach of the lease a virtually foregone conclusion. Indeed, the jury submitted a written question to the court during jury deliberations revealing the jury's incomprehension of tenant's behavior, asking: "Why did [landlord] not force out [tenant] after several months of unpaid rent? . . . What specifically justified the two years without rent?"

■ The jury's verdicts involving breach of the lease and recovery of excess rent are fatally flawed. The unlawful detainer action established that the property was a duplex subject to the RSO's limits. Those limits remained in place until the property resumed its condition as a single-family residence, which Phase I established was November 17, 2004. The jury should have had before it the question of whether tenant properly withheld rent in light of the finding of maximum rent made by Judge Abrams. The court should have instructed the jury on the effect of the earlier judgment. Because it did not do so, the court broke both the sword and shield that the RSO handed to tenant: the sword to attack the excess rent as violating the RSO, and the shield to defend against the charge that he had breached the lease by not paying rent. Consequently, we must remand this matter for retrial of tenant's cause of action to recover excess rent and landlord's cause of action for breach of the lease. In that retrial, the court shall instruct the jury that the RSO limited the rent increases landlord could impose while the property was a duplex to about 3 percent a year. (It will fall upon the parties to introduce evidence of the precise amount the rent adjustment commission allowed for any particular year.) The court shall further instruct the jury that any rent increase greater than the amount permitted under the RSO is unlawful, and thus, uncollectable, regardless of any private agreement or settlement between the tenant and landlord.

## 2. Restoring Property to Single-family Residence

Tenant contends the trial court's finding that landlord had restored the property as of November 2004 to its original condition of a single-family residence was error. He argued the finding violated the res judicata effect of Judge Abrams's conclusion that the property was a duplex. He cites no authority, however, that a property's condition cannot change. It follows, therefore, that, at least theoretically, Judge Abrams's finding that the property

was a duplex and the trial court's finding that landlord had restored the property to a single-family residence can be equally correct.

Although tenant does not frame his contention as such, it amounts to challenging the sufficiency of the evidence that the property had been restored to a single-family residence. When a party challenges on appeal the sufficiency of evidence, the party must discuss all the evidence supporting the court's ruling or the party waives the point. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].) Here, tenant briefly summarizes the court's reasons for concluding the property was a single-family residence, but does not explain how those facts were unsupported by the record or legally irrelevant. For example, two city inspectors— one from the Department of Building and Safety and the other from the Department of Water and Power—testified that they had inspected the property and determined that the home had been reconverted to a single-family residence. Tenant fails to show their testimony was insufficient to support the court's findings.

Tenant also contends the court erred in refusing to let City of Los Angeles building inspector Andrew Longoria testify about his opinion of the property's current status as a duplex. Longoria had last inspected the property four years before the trial, and the court was willing to let him testify about what he saw during those inspections. The court did not permit him to testify, however, as an expert about the legal status of the properties in 2004 based on conditions he not seen. We review the trial court's exclusion of evidence for abuse of discretion. (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 919, [74 Cal.Rptr.3d 733]; *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583, 602, [63 Cal.Rptr.3d 165].) Tenant does not discuss the court's ruling in light of that standard of review, and thus fails to show the court abused its discretion.

Tenant also contends the court erred in refusing to let him use for impeachment evidence an electronic document from a City of Los Angeles Web site. The court excluded the document because tenant had not listed it on his exhibit list, and the court deemed it not to be true impeachment of the witness against whom tenant tried to offer it. Tenant does not discuss the principles defining impeachment evidence and governing its admission, although at trial he seemed to believe the witness's unfamiliarity with the contents of document sufficed to make the document impeachment evidence.

(But see, e.g., Evid. Code, § 785 et seq.; see also 31A Cal.Jur.3d (2002) Evidence, § 764 ["A witness may not be impeached by evidence of statements made by another person, or by a writing for which he or she is in no way shown to be responsible." (Fns. omitted.)].) Because tenant does not analyze the court's ruling in light of the applicable abuse of discretion standard of review, we pass on his contention. *(People v. Whisenhunt* (2008) 44 Cal.4th 174 [79 Cal.Rptr.3d 125, 186 P.3d 496] [exclusion of impeachment evidence reviewed for abuse of discretion].)

### 3. *Breach of Settlement Agreement*

The settlement agreement contained a provision that barred tenant from reporting landlord to governmental agencies over matters the agreement covered. The first portion of paragraph 6(b) of the agreement stated: "[Tenant] further warrants and represents that he will not hereafter contest, protest, interfere with, or report, or cause a report to be made to, lodged, or filed with any person, entity, board, or any governmental or administrative agency concerning: (1) the fact of [landlord's] occupancy of the Lower Unit; (2) the use of the Lower Unit as a separate unit; (3) the fact that utilities are shared as a result of the conversion of the Premises; or (4) any of the acts or omissions identified or described in any pleading, discovery response, motion, exhibit, attorney letter, or otherwise, in the Civil Action;"

The second part of paragraph 6(b) continued with a provision obligating tenant not to impede landlord's attempts to restore the property to a lawful condition. Beginning with subsection (5), the paragraph described landlord's activities with which tenant must not interfere as: "any efforts undertaken by [landlord] to modify the Premises, in any way necessary to bring same into compliance with the requirements of law and/or to comply with any existing or future order, directive, or requirement of any governmental or administrative agency including, but not limited to, the Order To Comply issued by the County of Los Angeles Department of Building & Safety, dated May 28, 1998, or to otherwise modify the Premises to make them legal." The jury found tenant had breached the settlement agreement by violating paragraph 6(b). Tenant contends paragraph 6(b) is void because it violates Civil Code section 1953, which prohibits a tenant from waiving a future cause of action against a landlord. That statute provides: "Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive any of the following rights shall be void as contrary to public policy: [¶] . . . [¶] (2) His right to assert a cause of action against the lessor which may arise in the future." (Civ. Code, § 1953, subd. (a)(2).) Hence, tenant concludes, we

must reverse the jury's verdict finding he had breached the settlement agreement.[4]

Tenant's conclusion does not follow because landlord argued at trial that tenant violated the settlement agreement in two ways. The first was by anonymously complaining to the Department of Building and Safety about the property's condition after entering into the settlement agreement. The second was by interfering with landlord's attempt to restore the building to a single-family residence. As part of the restoration, landlord had complied with an order from the Department of Building and Safety that he remove the door between the two residential units. Tenant admitted at trial, however, to reinstalling the door. Landlord argued at trial that tenant's reinstallation of the door breached tenant's obligation not to interfere with landlord's efforts to return the property to a single-family residence.[5]

When two independent bases exist to support a jury's verdict, one of which is lawful and the other not, a reviewing court presumes the jury's verdict rested on a lawful basis unless the record affirmatively shows otherwise. (Accord, *People v. Guiton* (1993) 4 Cal.4th 1116, 1128 [17 Cal.Rptr.2d 365, 847 P.2d 45].) Tenant's contention challenging the jury's verdict that he breached the settlement agreement runs afoul of that rule. The verdict form did not identify the jury's reasons for finding tenant had breached paragraph 6(b) of the settlement agreement. Indeed, tenant acknowledges that the record does not reveal which theory the jury adopted. Even assuming the prohibition against reporting landlord to city officials is void, the verdict still stands because the record does not affirmatively show the jury relied on improper grounds.

### 4. *Retaliation Cause of Action*

Landlord served eviction notices on tenant in September and November 2004. In addition, landlord served a notice to increase tenant's rent to

---

[4] We assume for the sake of argument that appellant has correctly interpreted the first portion of paragraph 6 as improperly forcing him to waive future causes of action against respondent. Appellant's interpretation ignores, however, other language in paragraph 6 that states: "except as set forth in this Agreement, [appellant] shall otherwise enjoy any and all rights that any tenant in Los Angeles would have in regard to the occupancy and enjoyment of leased premises, including the right to report his landlord to any governmental or administrative agency having jurisdiction over the Premises."

[5] Appellant misrepresents Amendment 1 to the lease to argue he had the right to replace the door. He states in his brief that "Paragraph 7(a)(5) of Amendment No. 1 to Lease . . . affirmatively provided that Appellant was entitled to maintain a door between the two Units." In fact, the paragraph he cites stated that if a permanent entrance is required between appellant's premises and the lower floor previously occupied by respondent, the entrance shall be secured by locks on both sides with respondent and appellant each having his own key for his own lock.

$10,000 per month. Tenant contends the notices and rent increase violated Civil Code section 1942.5, subdivision (c) which prohibits a landlord from retaliating against a tenant for exercising his legal rights. The jury found landlord had retaliated against tenant, but also concluded tenant had not suffered any damages from the retaliation.

The court instructed the jury that tenant's cause of action for retaliation required that he not be in default in paying rent. The court appears to have derived that requirement from subdivision (a) of Civil Code section 1942.5 dealing with landlord retaliation after a tenant complains about a property's habitability. Because subdivision (c) upon which tenant rested his retaliation claim did not mention a tenant's obligation to be current in his rent, tenant contends the court erred in instructing the jury that such an obligation existed as a precondition for his retaliation claim.

Regardless of whether the court correctly instructed the jury, we find that any error was harmless because the jury found landlord had retaliated against tenant for exercising his rights as a tenant. The instruction thus did not defeat tenant's claim. Tenant did not, however, receive any damages award for retaliation because the jury found he suffered no damages from landlord's retaliation. Tenant in fact asked the jury to award damages. In arguing his damages, he told the jury that he alleged both statutory and common law retaliation. He asserted the evidence showed six acts of statutory retaliation involving multiple notices to pay late charges or quit and 90-day notices to terminate the tenancy. He further asserted the evidence showed common law retaliation in that landlord had retaliated by suing him when he contested landlord's right to terminate the tenancy and evict him. In addition, he highlighted for the jury that an important difference, in tenant's view, between statutory and common law retaliation was the measure of damages. Despite tenant's argument directing the jury's attention to his claimed damages, the jury awarded him none. Tenant offers no reasoned explanation of how the court's erroneous instruction (if it was erroneous) led the jury to reject his plea for damages. Thus the court's error, if any, was not prejudicial.

## DISPOSITION

The judgment is reversed and the matter is remanded for retrial of respondents Daniel B. Swartz and the Swartz Trust Agreement's cause of action for breach of the lease, and of appellant Andrew S. Gombiner's cause of action for recovery of excess rent. The court shall instruct the jury as to the lawful increases in rent permitted under the Rent Stabilization Ordinance of the City of Los Angeles during tenant Andrew S. Gombiner's occupancy of

the property while it remained a duplex subject to the ordinance's provisions. The court shall further instruct the jury that any rent increase greater than the amount permitted under the ordinance is unlawful, and thus, uncollectable, regardless of any private agreement or settlement between the tenant and landlord.

Cooper, P. J., and Flier, J., concurred.