Filed 10/16/13  Purnell v. Edwards CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DEBORAH A. PURNELL, | B242063 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC025122) |
| v. | |
| LARRY EDWARDS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lynn D. Olson and Rose Hom, Judges.  Reversed.

Deborah A. Purnell, in pro. per., for Plaintiff and Appellant.

Law Offices of Dennis P. Block & Associates and Dennis P. Block for Defendants and Respondents.

————————————————

After Deborah A. Purnell and her disabled father were evicted from the home they rented following entry of judgment in an unlawful detainer action, they filed the instant lawsuit against Audrey and Larry Edwards asserting causes of action including retaliatory eviction, religious persecution and breach of contract. The trial court sustained without leave to amend the Edwardses' demurrer to the second amended complaint and dismissed the action. Deborah appeals.[1] We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Unlawful Detainer Action*

According to the allegations of Deborah's first amended complaint and attached exhibits, Deborah leased a home from the Edwardses, who lived in Nevada, in 2001. Eugene did not sign the lease because he had begun suffering from Alzheimer's disease, but the Edwardses were aware he would be living in the home. In January 2009 Deborah, who was experiencing financial difficulties, requested a payment plan for past due and current rent. In a letter dated January 9, 2009 Audrey responded, "I am truly sympathetic to the issues you have endured. However, these are truly difficult times for us all. I am very hopeful that you will be able to follow through on this schedule as the last one was not able to be maintained. I need you to realize that this is an extreme hardship to have delinquent payment stretching into July. Therefore, I need to make sure you recognize that if this schedule is not met on time that I will be unwilling and unable to go any further in this endeavor."

In February 2009 Larry visited the home. In a letter dated February 16, 2009 Audrey informed Deborah a number of items "need to be done by both you and myself to assure that interior and exterior areas are kept up to standards of other homes in the neighborhood." Characterizing the house as "the poorest kept home in the community," Audrey identified as Deborah's responsibility "appropriately" maintaining the front and

---

[1] Because Deborah and her father, Eugene Purnell, and Audrey and Larry Edwards, husband and wife, share last names, we refer to them by their first names for convenience and clarity. (See *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 561, fn. 1.)

2

back yards, clearing out clutter inside the home and the garage "for insurance as well as safety purposes" and removing a "large truck in the driveway" that "has been a complaint by neighbors for some time." Audrey acknowledged there were repairs the Edwardses needed to make "once these areas have been improved."

Deborah responded with a single-spaced, five-page letter disputing Audrey's characterization of the home, explaining the reason certain conditions existed, contending she had made several improvements to the home at her own expense and had told Larry she intended to invest in additional improvements, and questioning whether the Edwardses were troubled about the religious message painted on the back of the truck, which had been parked in the driveway as long as the Purnells had lived at the home. Deborah stated, "Many of our neighbors have complimented the messages and stated that this family is a strong asset to the community. My dad's church truck has been in our family as a religious symbol and I plan on keeping it that way." In conclusion Deborah, who was "outraged," stated the Edwardses' "criticisms were unfounded, unfair and grossly inconsiderate of the overall circumstances." She asked the Edwardses to tell her their "intentions": "Are you planning to sell this house or make some change which involves different tenants or possible buyers . . . . It would be unfair and cruel of you to wait until I make more out-of-pocket- improvements to this house just so it could be suitable for a different family."

In response Audrey left Deborah a voicemail message stating, "I'm just so angry . . . . It's so outrageous to me that you would write such a book of ridiculousness but after all that I've done, go along with the rents being late and I sent you a basic little letter of some improvements . . . very very small little stuff, to get what you sent me is outrageous and I think that we . . . I have no intention of selling the house and have no one in line for getting the house but I believe . . . that after getting this letter, I really would like you to come up to date with this rent and we can talk about your going on and finding a place that you can feel better about . . . . I have accepted months of late rent, with obligations that I have . . . I don't need to hear these fabrications about my honor, have absolutely no concern about that, I have absolutely no feel about any of this garbage

3

that you put in this letter but I am incensed over this and we will have to deal with this because I just don't think we can go beyond this."

Three days later, on February 26, 2009, Deborah was served with a three-day notice to pay rent or quit premises, specifying delinquent rent was $3,500, and a 60-day notice to quit premises on the ground "the tenancy from month-to month under which you hold the possession . . . is terminated SIXTY (60) days after service on you of this notice." On March 3, 2009 Deborah sent the Edwardses and their attorney a "notice of intent to sue," stating she would file an action alleging causes of action including for breach of contract, malicious prosecution, religious persecution, wrongful eviction and elder abuse if the Edwards proceeded with an unlawful detainer action.

On March 6, 2009 Audrey filed an unlawful detainer action against Deborah. Deborah and Eugene answered, arguing the Edwards were seeking to evict them in retaliation for refusing to remove their truck and for requesting the Edwardses to make certain repairs. The answer asserted affirmative defenses for "elder abuse," retaliation, "unlawful demand to remove defendant's truck," "no delinquency in rent" and plaintiffs "accepted monies after 3-day notice." On April 7, 2009 the Purnells filed a cross-complaint asserting causes of action including retaliatory eviction, elder abuse, religious persecution and breach of contract, but it was apparently struck on the ground cross-complaints are not permitted in unlawful detainer actions.[2] On June 5, 2009 judgment was entered in favor of the Edwardses for $6,050 and possession of the premises.

2. *The First Amended Complaint; the Demurrer*

The Purnells, proceeding without counsel, filed their initial complaint in the instant action on March 4, 2011. On April 29, 2011 they filed a first amended complaint asserting causes of action including wrongful eviction, retaliatory eviction, discriminatory eviction, religious persecution, breach of contract, breach of the implied

---

[2]     As we discuss, the record on appeal includes only a few documents from the unlawful detainer action and does not include any transcripts of proceedings. Information about the unlawful detainer action is largely gleaned from the description of the earlier proceedings by the trial court in the instant action.

4

warranty of habitability and intentional infliction of emotional distress. The first amended complaint alleged the unlawful detainer court had dismissed the Purnell's cross-complaint, containing allegations similar to those in the first amended complaint, with leave to file the instant action. The essential allegations underlying both pleadings were (1) the rent was not delinquent when the notices were posted; (2) the Edwardses had returned a rent payment that had been timely mailed; (3) there were numerous trucks, vans, SUVs and motor homes on the same street and throughout the neighborhood; and (4) the Edwardses' posting of the 60-day notice at the same time they posted the three-day notice demonstrated the Edwards wanted to evict the Purnells whether or not the rent was paid.

The Edwardses demurred. The record on appeal does not include the supporting and opposing papers or any court orders filed in connection with the demurrer. Based upon the transcript from the hearing held on July 14, 2011, the trial court, which had issued a tentative ruling sustaining the demurrer, was concerned that some, if not all, of the causes of action had been resolved in the unlawful detainer proceeding, the statute of limitations barred the breach of contract claim, and Deborah was not permitted to represent Eugene because she was not an attorney. The trial court took the matter under submission and indicated it would "confer" with the judge from the unlawful detainer action because "I was not the one who tried this case. I saw what his words are."

At the continued hearing on August 10, 2011 the trial court sustained the demurrer with leave to amend. The court ruled Deborah was not permitted to represent Eugene as his guardian ad litem. With respect to whether the causes of action had already been litigated in connection with the unlawful detainer action, the court stated, "The issue is you cannot have a cross-complaint [in] an unlawful detainer case, so that was completely stricken. Now, what was in the cross-complaint was never dealt with because the whole cross-complaint was stricken. What you've done now is to file a civil suit based on the actions of the unlawful detainer, which you can do if the causes of action are proper. Now my reading of the causes of action are that they are not proper. . . . But I am going to give you leave to amend because most of the causes of action were encompassed . . . in

the defense of the unlawful detainer case.  So there are two issues.  I'm going to allow you leave to amend and you are going to have to clarify your father's status in this case."

2.  *The Second Amended Complaint; the Demurrer*

On August 30, 2011 Deborah filed a second amended complaint naming only herself as plaintiff and eliminating two of the causes of action that had been asserted in the first amended complaint—malicious prosecution and breach of the implied warranty of habitability.  The Edwardses again demurred, contending in part the claims were barred by res judicata, collateral estoppel and the statute of limitations; references to Eugene's truck—and claims predicated on any such allegations—must be struck because Deborah did not have standing to assert claims on his behalf; and the complaint was uncertain.  In support of their demurrer the Edwardses requested the trial court take judicial notice of the answer, cross-complaint and judgment in the unlawful detainer action and "take judicial notice of the fact that Purnell admits in paragraph 10 of the first amended complaint that the Cross-Complaint contained similar arguments as those in this Second Amended Complaint."

For the hearing on December 6, 2011 the trial court issued a tentative ruling sustaining the demurrer.  During the hearing the court acknowledged the tentative ruling was erroneous because it failed to recognize the cross-complaint in the unlawful detainer action had been struck.[3]  However, the court explained the error did not affect the outcome because there was a "statute of limitations issue" and "an issue of the validity of the facts in general, based on the fact that [Deborah] did not prevail" in the unlawful detainer action.  After Deborah and the Edwardses presented argument on the statute of limitations and whether the judgment in the unlawful detainer action barred the second amended complaint because the underlying issues had been raised as affirmative defenses and resolved against Deborah, the trial court took the matter under submission.

On January 4, 2012 the trial court sustained the Edwardses' demurrer without leave to amend.  The minute order stated the demurrer had been sustained "on grounds of

---

[3]  The tentative ruling also erroneously stated the demurrer was unopposed.

6

failure to state facts constituting a cause of action. The issues raised in the cross-complaint were addressed in the unlawful detainer action involving the same parties. (See case number 09Q00475.) The answer in the unlawful detainer action alleged elder abuse and retaliation, among other affirmative defenses."

In February 2012, after the case had been assigned to a new judge, Deborah moved to set aside the ruling sustaining the demurrer without leave to amend. On March 23, 2012 the motion was denied, and a judgment of dismissal was entered on June 1, 2012.

## DISCUSSION

1. *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital D*ist. (1992) 2 Cal.4th 962, 967.) We may also consider matters that have been judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; see *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry,* at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

2. *The Edwardses Have Failed To Meet the Requirements for Application of Collateral Estoppel*

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a

7

second suit between the same parties or parties in privity with them.  Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  "The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.'" (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 (*Vella*).)

The Edwardses's unsupported argument in this court notwithstanding, res judicata—the doctrine of merger and bar or claim preclusion—is wholly inapplicable to a plaintiff who is pursuing causes of action that mirror affirmative defenses he or she asserted as a defendant in another lawsuit.  Res judicata protects the indivisibility of a cause of action (or "primary right"); the same plaintiff (or one in privity with him or her) cannot assert a cause of action on a new legal theory in a second lawsuit after litigating the same cause of action to judgment in an earlier proceeding.  (*Mycogen Corp. v. Monsanto Co., supra*, 28 Cal.4th at pp. 896-897 [under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action]; see generally *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798 ["To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'  [Citation.]  Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests.  "Of these elements, the primary right and duty and the delict or wrong combined

8

constitute the cause of action in the legal sense of the term . . . .""'"].) [4] Nothing of the sort occurred here.

Collateral estoppel or issue preclusion, on the other hand, the theory upon which the trial court sustained the Edwardses' demurrer, under appropriate circumstances can bar a lawsuit based on matters previously determined as affirmative defenses in a prior action. However, a prior decision precludes relitigation of an issue under the doctrine of collateral estoppel only if five threshold requirements are satisfied: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; accord, *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943; see also *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 346 ["[a]lthough a second action between the parties on a different cause of action is not barred by res judicata, nevertheless '. . . the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action"'"].) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Lucido*, at p. 341; *Pacific Lumber Co.*, at p. 943.)

Generally, an unlawful detainer judgment has limited preclusive effect because unlawful detainer proceedings are summary in nature and focus only on determining a party's right to immediate possession of property. (See *Gombiner v. Swartz* (2008)

[4] An exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum. (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 344; *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170.)

9

167 Cal.App.4th 1365, 1371; *Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557.) However, "'full and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided—will result in a judgment conclusive upon issues material to that defense." (*Vella*, *supra*, 20 Cal.3d at pp. 256-257; see *Gombiner*, at p. 1371 ["when litigants to an unlawful detainer proceeding fully try other issues besides the right of possession, the unlawful detainer judgment is conclusive as to those other litigated issues"]; *Pelletier*, at p. 1557 ["[l]egal and equitable claims—such as questions of title and affirmative defenses—are not conclusively established unless they were fully and fairly litigated in an adversary hearing"].) "In a summary proceeding such circumstances are uncommon." (*Vella*, at p. 257.)

Although potentially available as a defense to Deborah's claims, the Edwardses have failed to carry their burden at the pleading stage of establishing collateral estoppel precludes those claims as a matter of law. (See *Vella*, *supra*, 20 Cal.3d at p. 257.) The Edwardses' argument, predicated only on documents demonstrating the similarity between the allegations and arguments in the unlawful detainer answer and cross-complaint, on the one hand, and the second amended complaint in the instant action, on the other hand, "fails to show either the precise nature of the factual issues litigated, or the depth of the court's inquiry." (*Id.* at p. 258.) There are no findings of fact or conclusions of law. (*Ibid.*) Indeed, the trial court apparently found it necessary to confer with the judge who had presided at the unlawful detainer action, suggesting the record before it was insufficient. (Cf. *id.* at p. 256 ["lengthy and comprehensive superior court record replete with precise findings of fact persuaded the *Wood* court that application of collateral estoppel to curtail further litigation would involve 'no miscarriage of justice—[the] Woods have had their day in court'"].) That discussion, of course, is not in the record, which is all we are permitted to review. On this sparse record, we simply cannot conclude Deborah had her day in court. (See *Vella*, at p. 258 ["[i]n return for speedy determination of his right to possession, plaintiff sacrifices the comprehensive finality that characterizes judgments in nonsummary actions"].)

10

3. *The Pleadings and Documents Subject to Judicial Notice Do Not Demonstrate the Statute of Limitations Has Expired*

A complaint disclosing on its face or based on matters properly subject to judicial notice that the limitations period has expired as to one or more causes of action is subject to demurrer. (See *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825; *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1421 [although general demurrer does not ordinarily reach affirmative defenses, it "'will lie where the complaint "has included allegations that *clearly* disclose some defense or bar to recovery"'"]; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881 ["[i]t must appear clearly and affirmatively that, upon the face of the complaint the right of action is necessarily barred"].) If a demurrer demonstrates a pleading is untimely on its face, it becomes the plaintiff's burden "even at the pleading stage" to establish an exception to the limitations period. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1197.)

Although the trial court did not reach the issue because of its erroneous ruling on collateral estoppel, the Edwardses demurred to the entire second amended complaint "on the ground that the pleading is barred by the statute of limitations." Notwithstanding the wide variety of liability theories advanced by Deborah, in their supporting memorandum the Edwardses addressed only the two year limitations period in Code of Civil Procedure section 339 for breach of an oral contract and what they described as the one year limitations period for intentional torts in the "Tort Claims Act" (presumably, the Government Claims Act, Gov. Code, § 900 et seq.). This argument is repeated on appeal, with the Edwardses asserting Deborah's complaint, initially filed on March 4, 2011, is barred because the pleading and attached exhibits demonstrate she was fully aware of the facts that form the basis for her claims in February 2009.

This limitations argument is fundamentally flawed. First, the Government Claims Act has no role in assessing the timeliness of claims by one private party against another. (See e.g. *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 619 [purpose of Government Claims Act is to provide public entities sufficient information to enable

11

them to adequately investigate clams and to settle them, if appropriate, without the expense of litigation].)

Second, Deborah's lawsuit was filed within two years of the filing of the Edwardses' unlawful detainer action on March 6, 2009. Whether her various claims accrued at that point or, as is more likely, when she and her father were finally evicted from their rented home, the limitations period did not begin to run simply because she was aware some time before the unlawful detainer action was filed that the Edwardses were contemplating terminating the tenancy. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 ["[g]enerally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements'"]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [accrual of a cause of action presupposes all of the elements necessary to that cause of action have come into existence].)

4. *The Edwards Fail To Support with Legal Authority Their Argument Dismissal of Eugene Destroys Deborah's Causes of Action*

As a final argument, in four sentences without citation to authority, the Edwardses contend all references to Eugene's truck, senior citizens, the Ellis Act, relocation assistance and disabled persons should be struck because Eugene was dismissed from the action and Deborah lacks standing to assert claims on his behalf. They then argue, without those allegations, the complaint fails to state any cause of action but fail to provide any analysis to support their conclusion. While it may be the dismissal of Eugene affects some of the damages Deborah seeks, we decline to address this unsupported argument, which was not, in any event, reached by the trial court. (See, e.g., *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1099 [we need not consider undeveloped challenges to the trial court's ruling]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [absence of legal argument and citation to authorities in support of contention results in its forfeiture].)

12

## DISPOSITION

The judgment against Deborah Purnell is reversed.  Deborah Purnell is to recover her costs on appeal.


                                                  PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

13