Filed 12/31/14  Ehrlichman v. Heart Tronics CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LEE B. EHRLICHMAN, | B251805 |
| Plaintiff and Respondent. | (Los Angeles County Super. Ct. No. BC408322) |
| v. | |
| HEART TRONICS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.
Mary H. Strobel, Judge.  Affirmed.

Spire Law Group, LLP, and James N. Fiedler, for Defendant and Appellant.

Law Offices of Lisa L. Maki and Lisa L. Maki for Plaintiff and Respondent.

————————————————

Heart Tronics, Inc., appeals from the judgment awarding former chief operating officer Lee B. Ehrlichman more than $1.2 million for breach of contract, wrongful termination, and related statutory wage violations after the trial court found that Heart Tronics fired Ehrlichman without cause. We reject Heart Tronics' contention that there was insufficient evidence to support the judgment and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

In June 2008 Lee B. Ehrlichman was hired as chief operating officer of Heart Tronics, Inc., a start-up business that had developed improved electrocardiogram technology.[1] The parties' written employment agreement provided Ehrlichman an annual salary of $500,000, along with relocation expenses and other benefits. Ehrlichman took the job after working for several weeks as a consultant for the company, in part so he could determine whether the company was viable.

Under the agreement Ehrlichman was entitled to two-year' severance pay if he were fired without good cause. The agreement defined good cause as follows: conduct that led to Heart Tronics being convicted of a crime or incurring criminal penalties; directives by appropriate government entities that Ehrlichman be terminated; Ehrlichman's conviction of a felony offense or a misdemeanor involving a crime of dishonesty or moral turpitude; and the falsity of any of Ehrlichman's representations and warranties contained in the agreement. The agreement contained three representations and warranties applicable to Ehrlichman – concerning advice of counsel and the absence of duress and coercion in the negotiation and execution of the agreement, and that he was not disabled at the time of execution.

The employment agreement provided that Ehrlichman would be paid at least semi-monthly. Although Ehrlichman was paid during July and August 2008, he was not paid during September or October. On October 28, 2008, Ehrlichman sent a letter to Heart Tronics' board of directors stating that he would be forced to resign unless he was paid.

---

[1] Heart Tronics was a dba of Signalife, Inc. When we refer to Heart Tronics we include Signalife where applicable.

In response Heart Tronics' in-house counsel Mitchell J. Stein sent Ehrlichman a letter on October 29, 2008, that declared the employment agreement void from the start based on numerous alleged acts of fraud and other misconduct by Ehrlichman. These included: taking a two-week vacation two days after signing the employment agreement; making false sales forecasts and then not making any sales; and failing to draw against the company's line of credit in order to pay his own salary.[2]

Ehrlichman sued Heart Tronics and Stein, alleging the following causes of action: fraudulently inducing him to relocate from Pennsylvania in violation of Labor Code section 970, along with common law claims for fraud and negligent misrepresentation based on the same conduct; breach of written and oral agreements to provide two years' severance pay and other damages for firing him without cause; Labor Code violations for unpaid wages and waiting time penalties; wrongful termination in violation of public policy based on firing him in retaliation for his demand that he be paid; and defamation.[3]

A bench trial was held where Ehrlichman and Heart Tronics' President James Fiedler testified and the deposition testimony of former company chairman Rowland Perkins was admitted. Heart Tronics did not dispute that it failed to pay Ehrlichman. Instead, Heart Tronics argued that it was excused from doing so for several reasons: (1) Ehrlichman could have simply drawn against the company's line of credit to pay himself, but failed to do so; (2) he should have requested payment in stock in lieu of cash, as authorized by the agreement; (3) as set forth in Stein's October 29, 2008, letter, Ehrlichman was fired for cause; and (4) Ehrlichman's claims were barred under the equitable doctrine of unclean hands because he violated federal securities law by borrowing money from a board member.

---

[2] Stein's letter is a nine-page rant with accusations posed Jeopardy style in the form of questions that Ehrlichman was dared to deny. Its petty tone reads more like schoolyard threats and taunting and was, at a minimum, unprofessional.

[3] Because the complaint is not in the record, our description of Ehrlichman's causes of action comes from the trial court's minute orders and statement of decision.

3

The trial court – in a fairly detailed statement of decision – rejected these defenses. Concerning Ehrlichman's supposed failure to simply pay himself by drawing on the company's line of credit, the trial court noted a conflict in the evidence:  While Board Chairman Perkins testified that Ehrlichman could have drawn on the credit line, Ehrlichman testified that he had no control over the line of credit, and that his attempts to draw on it were rebuffed by Perkins and in-house counsel Stein.  The trial court resolved this conflict in favor of Ehrlichman, finding his testimony credible.

Concerning Ehrlichman's failure to request payment in shares of stock, the trial court noted that the employment agreement left that option solely in the company's hands and found no evidence to show that the company ever exercised that option.

Concerning Ehrlichman's alleged breaches of contract, the trial court noted that Ehrlichman testified that the accusatory questions in Stein's October 29 letter were either untrue or half-truths and that nobody had previously raised those issues.  The trial court found that the alleged breaches were "not supported by any evidence."  Stein's October 29 letter was not sworn testimony and Stein did not testify regarding the bases of his accusations.  Although Perkins testified that he was disappointed in Ehrlichman's sales efforts, the employment agreement did not link his compensation to any stated sales goals.  Perkins did not testify that Ehrlichman had been fired for cause and instead said that the company had accepted his resignation.  Based on the evidence, the trial court found the company was not excused from paying Ehrlichman's salary.

Concerning the unclean hands defense and Ehrlichman's supposed violation of federal securities law by accepting a $5,000 loan from a board member, the trial court found that the company presented no evidence it suffered any consequences from Ehrlichman's actions.  The trial court also found that Ehrlichman did not act unconscionably or in bad faith, thereby precluding application of the unclean hands doctrine.

Summing up, the trial court found that Heart Tronics fired Ehrlichman without good cause.  The trial court also found that the company fired Ehrlichman in violation of public policy by drawing the inference that Ehrlichman had been fired in retaliation for

4

having demanded payment of his wages. The company's willful failure to pay Ehrlichman's wages violated the Labor Code, entitling him to both his wages and waiting time penalties. The trial court awarded Ehrlichman damages of nearly $1.3 million as follows: (1) $1 million, representing two years of contractual severance pay; and (2) nearly $282,000 in unpaid wages, liquidated damages and waiting time penalties. (Lab. Code, §§ 203, 1194.2.)[4]

Heart Tronics contends there was insufficient evidence to support any of the trial court's findings.

## DISCUSSION

1.  *Heart Tronics Has Waived Its Substantial Evidence Challenge*

The purpose of a statement of decision is to provide an explanation of the factual and legal basis for the trial court's decision. (*Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App.4th 814, 825.) It gives the parties and the appellate court a clear understanding of the facts and law relied on by the trial court to reach its decision and serves as the touchstone for determining whether the facts and the law support the trial court's decision. (*Ibid.; Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) We review the trial court's factual findings under the substantial evidence standard of review. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.)

Because Heart Tronics raises substantial evidence challenges to the judgment, it was subject to certain rules and principles governing the presentation of facts and arguments in its appellate briefs. These include: presenting the facts fully and completely, and not in a one-sided manner; providing an adequate record to permit meaningful appellate review; and proper citation to the record and applicable legal authority. (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1374.)

---

[4] The trial court found for the company on Ehrlichman's misrepresentation and Labor Code section 970 causes of action, as well as his causes of action for defamation and breach of oral contract.

5

Heart Tronics has failed to meet these obligations. It has provided only a partial reporter's transcript, omitting the last day of testimony, where company president Fiedler testified for both parties. The statement of facts in its opening appellate brief makes numerous factual assertions without record citations. Heart Tronics gives at most a passing nod to the trial court's statement of decision and provides only those facts favorable to itself, without discussing the adverse evidence described in the statement of decision. As discussed in section 2, it has not cited proper authority to support its contentions that it had good cause to fire Ehrlichman and that Ehrlichman had unclean hands for violating federal securities law. Accordingly, Heart Tronics' substantial evidence challenges are waived. (*Gombiner v. Swartz, supra,* 167 Cal.App.4th at p. 1374.) As set forth next, we alternatively hold on the merits that the judgment is supported by substantial evidence.

2.      *Substantial Evidence Supports the Judgment*

Heart Tronics contends there was insufficient evidence to support the judgment for the following reasons: (1) Stein's October 29 letter of accusations cannot be second-guessed, pursuant to *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 100-101 (*Cotran*); (2) Ehrlichman did not deny and failed to disprove the accusations in Stein's letter; (3) Ehrlichman had a corporate duty to draw on the company's line of credit and failed to disprove his ability to have done so; (4) Ehrlichman was not entitled to Labor Code waiting time penalties because there was no evidence that Heart Tronics intentionally failed to pay his wages; and (5) the unclean hands doctrine was established by the evidence. We begin with the first two contentions, and then take the others in turn.

*Cotran, supra,* 17 Cal.4th 93 concerned the scope of the fact-finder's inquiry in a wrongful discharge case based on an *implied-in-fact* contract to terminate only for cause. In such cases, the *Cotran* court held, the test is not whether the employee's misconduct actually occurred. Instead, the proper inquiry focuses on whether the employer concluded in good faith, albeit mistakenly, that the misconduct occurred, as opposed to firing the employee arbitrarily or on a pretext. (*Id.* at p. 107.)

6

Heart Tronics fails to mention the distinction between express and implied-in-fact contracts drawn by the *Cotran* court. When an express contract to terminate only for cause is involved, a different standard may apply, "depending on the precise terms of the contract provision." (*Cotran, supra,* 17 Cal.4th at p. 96, fn. 1.)

As noted earlier, the employment agreement defined what constituted a good cause termination: the falsity of any of Ehrlichman's representations and warranties contained in the agreement; conduct that led to Heart Tronics being convicted of a crime or incurring criminal penalties; directives by appropriate government entities that Ehrlichman be terminated; and Ehrlichman's conviction of a felony offense or a misdemeanor involving a crime of dishonesty or moral turpitude. The trial court relied on these provisions and found that none of the designated instances of good cause had occurred. Signalife does not address this issue at all, leading us to deem it waived. Alternatively, nothing in the record indicates that any of the specified instances of good cause ever occurred.

Furthermore, even if *Cotran* applies and the actions described in Stein's letter could constitute good cause, Heart Tronics has never addressed the other component of the *Cotran* test: whether it acted arbitrarily or on a pretext. Ehrlichman denied that the conduct described in Stein's letter ever occurred. As a result, there was substantial evidence to support a finding that Stein was fired on a pretext.

As for the unclean hands defense, it is based on Heart Tronics' contention that Ehrlichman violated section 402 of the Public Company Accounting Reform and Corporate Responsibility Act of 2002 (15 U.S.C. § 7201, et seq. (the Sarbanes-Oxley Act)) by accepting a $5,000 loan from a board member. That section applies only when a person who issues or proposes to issue any security makes a loan to a company director or executive officer. (15 U.S.C. §§ 78c(a)(8), 78m(k)(1) & 7201(7).) Ehrlichman testified that Board Member Jennifer Black loaned him $5,000 because she felt bad that he had not been paid. There is no evidence that Black was an "issuer" as defined by Sarbanes-Oxley, an issue that Heart Tronics has failed to acknowledge or address. Accordingly, we see no evidence that the requisite violation of law occurred.

7

As for Ehrlichman's supposed failure to draw on the company's line of credit and the supposed absence of evidence that Heart Tronics intentionally failed to pay his wages, we simply note the following: (1) Ehrlichman testified that he was prevented from drawing on the line of credit; and (2) the circumstances surrounding his termination without cause at least create an inference that the company intentionally withheld his wages. To suggest that when an employer fails to pay its COO his salary contract, the COO has a contractual *duty* to draw down on the employer's credit line strikes us as ludicrous.

Finally, Heart Tronics contends that the damage award was excessive because it did not account for the fact that Ehrlichman took another job soon after he was fired, meaning that the amount of his damages should have been offset by the amount of the salary from his new job. We reject this contention for two reasons. First, apart from a citation to Ehrlichman's opening statement concerning the fact that he took a new job, Heart Tronics does not cite to any portion of the record to substantiate that assertion or show the amount of salary Ehrlichman earned from his new job. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [reviewing court has no obligation to search the record and points not supported by appropriate record citations are waived].) Second, Heart Tronics does not contend, and the record does not show, that it ever moved for a new trial on the ground that the damage award was excessive. The contention is therefore waived for that reason as well. (*Zaxis Wireless Communications, Inc. v. Motor Sound Corp.* (2001) 89 Cal.App.4th 577, 581, fn. 3.)

## DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.                                           FLIER, J .

8